J-A20035-19

2019 PA Super 343

| BRADLEY E. KLINE | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| | : | |
| TRAVELERS PERSONAL SECURITY | : | |
| INSURANCE COMPANY | : | |
| | : | |
| Appellant | : | No. 104 MDA 2019 |

Appeal from the Order Entered December 18, 2018
In the Court of Common Pleas of York County
Civil Division at No(s): 2015-SU-003883-89

| BRADLEY E. KLINE | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| TRAVELERS PERSONAL SECURITY | : | |
| INSURANCE COMPANY | : | |
| | : | |
| Appellee | : | No. 164 MDA 2019 |

Appeal from the Order Entered December 18, 2018
In the Court of Common Pleas of York County
Civil Division at No(s): 2015-SU-003883-89

BEFORE: GANTMAN, P.J.E., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

OPINION BY GANTMAN, P.J.E.: **FILED NOVEMBER 18, 2019**

Appellant/Cross-Appellee, Bradley E. Kline, and Appellee/Cross-Appellant, Travelers Personal Security Insurance Company ("Travelers"), appeal from the order entered in the York County Court of Common Pleas, in this declaratory judgment action, that granted partial summary judgment in favor of Appellant/Cross-Appellee Kline, granted in part and denied in part

Travelers' cross-motion for summary judgment, and entered final judgment against Travelers in the amount of $100,000.00, plus interests and costs. For the following reasons, we vacate and remand with instructions.

In its opinion, the trial court sets forth the relevant facts of this appeal as follows:

> [Appellant/Cross-Appellee Kline] brought this action as a result of the injuries he sustained while operating his motor vehicle. This action concerns an issue related to an automobile insurance policy entered into between [Appellant/Cross-Appellee Kline] and [Travelers], and an issue related to an automobile insurance policy entered into between [Appellant/Cross-Appellee Kline]'s mother and [Travelers]. The first issue is before this [c]ourt on both [parties'] Cross Motions for Summary Judgment. It concerns a dispute as to whether [Appellant/Cross-Appellee Kline] is entitled to stack underinsured motorist benefits where [Travelers] did not issue new rejection of stacking waiver forms upon [Appellant/Cross-Appellee Kline] adding two vehicles to his insurance policy. The second issue is before this [c]ourt on [Travelers'] Motion for Summary Judgment. It concerns whether [Appellant/Cross-Appellee Kline] is entitled to stacked benefits under the insurance policy entered into between his mother and [Travelers]. The following facts were stipulated by the parties:
>
> [Appellant/Cross-Appellee Kline] applied for an automobile insurance policy ("the Policy") with [Travelers] in August of 2002. At the time, [Appellant/Cross-Appellee Kline] selected uninsured motorist benefits ("UM") and underinsured motorist benefits ("UIM") in the amount of $50,000 each person/$100,000 each accident. [Appellant/Cross-Appellee Kline] rejected stacked UIM coverage by signing a rejection of stacking waiver form. [Appellant/Cross-Appellee Kline's] Policy covered one vehicle at its inception, a 1999 Pontiac Grand Prix. The 1999 Pontiac Grand Prix was later replaced by a 2002 Pontiac Firebird.
>
> On or about June 6, 2007, [Appellant/Cross-Appellee Kline]

- 2 -

**added** a 2001 Pontiac Montana to the Policy. By doing so, [Appellant/Cross-Appellee Kline] increased the number of covered vehicles from one to two. [Appellant/Cross-Appellee Kline] notified his insurance agent and an amended Automobile Policy Declaration sheet was issued reflecting the addition to the vehicle to the Policy. [Travelers] did not present [Appellant/Cross-Appellee Kline] with a new stacking rejection form when the 2001 Pontiac Montana was added to the Policy. The 2001 Pontiac Montana was later replaced by a 2008 Chevrolet Uplander.

On or about August 11, 2011, [Appellant/Cross-Appellee Kline] **added** a 2003 Pontiac Vibe to the Policy. By doing so, [Appellant/Cross-Appellee Kline] increased the number of covered vehicles from two to three. [Appellant/Cross-Appellee Kline] notified his insurance agent and an amended Automobile Policy Declarations sheet was issued reflecting the addition of the vehicle to the Policy. [Travelers] did not present [Appellant/Cross-Appellee Kline] with a new stacking rejection form when the 2003 Pontiac Vibe was added to the Policy.

The Automobile Policy Declarations sheets reflected non-stacked UM and UIM coverage benefits of $50,000 each person/$100,000 each accident from the date of [Appellant/Cross-Appellee Kline's] Policy's inception to the date of the subject motor vehicle accident.

Section J of the Policy ("Section J") states, in pertinent part:

"Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

b. a pickup or van.

This provision (J.2) applies only if:

a. you acquire the vehicle during the

- 3 -

policy period;

b. you ask us to insure it within 30 days
after you become the owner; and

c. with respect to a pickup or van, no
other insurance policy provides coverage
for that vehicle.

If the vehicle you acquire replaces one shown in
the Declarations, it will have the same coverage
as the vehicle it replaced.  You must ask us to
insure a replacement vehicle within 30 days only
if:

a.  you wish to add or continue Damage to
Your Auto Coverages; or

b. it is a pickup or van used in any
"business" other than farming or
ranching.

If the vehicle you acquire is in addition to any
shown in the Declarations, it will have the
broadest coverage we now provide for any
vehicle shown in the Declarations.

([Declaratory Judgment Complaint, Exhibit "B"; R.R. at 30a-
31a]).  All three of the vehicles covered at the time of the
motor vehicle accident constituted "covered autos" as
defined by Section J.

On September 18, 2012, [Appellant/Cross-Appellee Kline]
was involved in a motor vehicle accident while operating the
2003 Pontiac Vibe.  [He] asserted a UIM claim under the
Policy as a result of the injuries he sustained.  [Travelers]
tendered the non-stacked UIM coverage limits of $50,000.

Miriam Kline is the mother of [Appellant/Cross-Appellee
Kline].   At all relevant times, Miriam Kline insured a
Chevrolet Cruze with [Travelers] under a different policy.  At
the time of the motor vehicle accident, Miriam Kline had
stacked UIM coverage on her policy in the amount of
$100,000    each    person/$300,000    each    accident.

[Appellant/Cross-Appellee Kline] resided with Miriam Kline at all relevant times.

(Trial Court Opinion, filed December 18, 2018, at 2-4) (internal citations to record, some internal quotations omitted, some emphasis added).  Ms. Kline's policy contained a "household vehicle exclusion" that reads in pertinent part:

> B. We do not provide [UM] or [UIM] Coverage for bodily injury sustained:
>
> * * *
>
> 2. By a "family member":
>
> a. Who owns an auto while "occupying", or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy.  …

(Declaratory Judgment Complaint, Exhibit "J").  Ms. Kline's policy defines "family member," in relevant part, as "a person related to you by blood…who is a resident of your household.  This includes a ward or foster child."  (*Id.*).

Procedurally,

> [Appellant/Cross-Appellee Kline] filed this [declaratory judgment] action in the York County Court of Common Pleas on November 23, 2015.  On December 22, 2015, [Travelers] filed a timely Notice of Removal pursuant to 28 U.S.C. §§ 1141 and 1146(b).  The case was removed to the United States District Court for the Middle District of Pennsylvania.  [Appellant/Cross-Appellee Kline] subsequently filed a Motion to Remand the case.  On May 1[0], 2016, the District Court granted [Appellant/Cross-Appellee Kline]'s motion and remanded the case to this [c]ourt.
>
> The parties filed a Joint Stipulation of Facts on February 16, 2018.  On October 1, 2018, [Appellant/Cross-Appellee Kline] and [Travelers] filed Cross Motions for Summary

Judgment and Briefs in support thereof. …

(Trial Court Opinion, at 4-5). In his motion, Appellant/Cross-Appellee Kline sought summary judgment on his claim for stacked UIM benefits under his Policy. Travelers sought summary judgment in its favor and against Appellant/Cross-Appellee Kline's claims for stacked UIM benefits under the "continuous, non-finite, after-acquired vehicle provision" in his Policy. (**See** Travelers' Motion for Summary Judgment, 10/1/18, at 7 ¶35; R.R. at 167b.) Travelers also requested a declaration from the court that Appellant/Cross-Appellee Kline was not entitled to UIM benefits under Ms. Kline's policy with Travelers, under the household exclusion provision in her policy, which operates to preclude coverage to Appellant/Cross-Appellee Kline.

On December 18, 2018, the court entered an order that: (1) granted partial summary judgment in favor of Appellant/Cross-Appellee Kline on his claim for stacked UIM benefits under **his** Policy; (2) denied in part summary judgment for Travelers, finding Travelers must provide Appellant/Cross-Appellee Kline stacked UIM benefits under **his** Policy but granted summary judgment in part finding Travelers did not have to provide Appellant/Cross-Appellee Kline stacked UIM under Ms. Kline's policy, due to the "household vehicle" exclusion provision in her policy; and (3) entered judgment in favor Appellant/Cross-Appellee Kline and against Travelers in the amount of $100,000.00, which represented the remainder of the maximum available stacked UIM coverage under Appellant/Cross-Appellee Kline's policy only, plus

interest and costs.

Travelers timely filed a notice of appeal on January 16, 2019. The court ordered Travelers on January 17, 2019, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). On January 29, 2019, Appellant/Cross-Appellee Kline timely filed a notice of cross-appeal. The court ordered Appellant/Cross-Appellee Kline on January 31, 2019, to file a Rule 1925(b) statement. Travelers and Appellant/Cross-Appellee Kline timely filed their Rule 1925(b) statements on February 6, 2019, and February 15, 2019, respectively. This Court consolidated the parties' appeals *sua sponte* on February 13, 2019. On March 5, 2019, the parties filed in this Court a joint application to amend the briefing schedule, which this Court granted on March 19, 2019, and declared Appellant/Cross-Appellee Kline as Appellant/Cross-Appellee in this appeal.

At No. 164 MDA 2019, Appellant/Cross-Appellee Kline raises the following issue for our review:

> DID THE COURT ERR IN RULING [APPELLANT/CROSS-APPELLEE KLINE] WAS NOT ENTITLED TO UIM BENEFITS, INCLUDING STACKED BENEFITS, UNDER HIS MOTHER'S INSURANCE POLICY WHERE THE SUPREME COURT HAS RULED THE HOUSEHOLD EXCLUSION TO BE INVALID AND CONTRARY TO PENNSYLVANIA LAW, AND WHERE TRAVELERS FAILED TO OBTAIN THE REQUIRED STACKING REJECTION FORMS FROM APPELLANT[/CROSS-APPELLEE KLINE]?

(Appellant/Cross-Appellee Kline's Brief at 8).

At No. 104 MDA 2019, Travelers raises two issues for our review:

DID THE TRIAL COURT ERR WHEN IT GRANTED [APPELLANT/CROSS-APPELLEE] KLINE'S PARTIAL MOTION FOR SUMMARY JUDGMENT, AND DENIED, IN PART, TRAVELERS' MOTION FOR SUMMARY JUDGMENT, RULED THAT [APPELLANT/CROSS-APPELLEE] KLINE IS ENTITLED TO STACKED UIM BENEFITS UNDER HIS TRAVELERS POLICY, AND ENTERED JUDGMENT IN FAVOR OF [APPELLANT/CROSS-APPELLEE] KLINE AND AGAINST TRAVELERS IN THE AMOUNT OF $100,000, WHERE [APPELLANT/CROSS-APPELLEE] KLINE SIGNED A VALID STACKING REJECTION FORM AT THE INCEPTION OF HIS TRAVELERS POLICY, AND WHERE VEHICLES WERE SUBSEQUENTLY REPLACED AND ADDED TO [HIS] TRAVELERS POLICY PURSUANT TO THE POLICY'S CONTINUOUS AFTER-ACQUIRED VEHICLE CLAUSE?

DID THE TRIAL COURT PROPERLY GRANT TRAVELERS' MOTION FOR SUMMARY JUDGMENT, IN PART, WHERE THE HOUSEHOLD VEHICLE EXCLUSION IN MIRIAM KLINE'S TRAVELERS POLICY IS VALID, ENFORCEABLE, AND DIRECTLY APPLIES TO THE FACTS OF THIS CASE, AND WHERE ***GALLAGHER V. GEICO*** [***INDEMNITY COMPANY***, ___ PA. ___, 201 A.3D 131 (2019)] DOES NOT APPLY?

(Travelers' Brief at 3).

For disposition purposes, we initially address Travelers' issue one, where Travelers argues Appellant/Cross-Appellee Kline is not entitled to stacked UIM benefits under his Policy. Travelers submits Appellant/Cross-Appellee Kline's addition of the 2001 Pontiac Montana and later the 2003 Pontiac Vibe to his Policy did not constitute a "purchase of coverage" triggering the need for new stacking waivers. Instead, Travelers maintains the after-acquired vehicle clause of that Policy automatically extended existing continuous coverage to the new vehicles. Travelers avers Section 1738 of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. §§ 1701-1799.7 ("MVFRL"),

does not require Travelers to issue new stacking waiver forms to Appellant/Cross-Appellee Kline each time he added another vehicle to his Policy. Travelers claims the trial court incorrectly relied on **Newhook v. Erie Insurance Exchange**, No. 1917 EDA 2017, unpublished memorandum (Pa.Super. filed April 25, 2018), which is a non-precedential decision.

Travelers also complains Appellant/Cross-Appellee Kline is not entitled to an actual award of $100,000.00 in "monetary damages," as he did not request any money damages in his declaratory judgment complaint; and the parties' cross-motions for summary judgment did not address specific damages, just the "entitlement" to UIM coverage. Travelers concludes this Court should reverse the trial court's order to the extent it grants Appellant/Cross-Appellee Kline summary judgment on his claim for stacked UIM benefits under his Policy. Travelers also concludes we must reverse the court's order directing Travelers to pay Appellant/Cross-Appellee Kline $100,000.00 plus interest and costs of suit. For the following reasons, we disagree with Travelers on its coverage issue but agree with Travelers on its money damages complaint.

"In reviewing a declaratory judgment action, we are limited to determining whether the trial court clearly abused its discretion or committed an error of law." **Murphy v. Martini**, 884 A.2d 262, 265 (Pa.Super. 2005) (quoting **Bianchi v. Bianchi**, 859 A.2d 511, 515 (Pa.Super. 2004)).

> Declaratory judgment actions follow the practice and procedure of an action in equity. Consequently, we will

review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

*Murphy, supra* at 265 (quoting *White v. Keystone Ins. Co.*, 775 A.2d 812, 813 (Pa.Super. 2001)).  A court sitting in equity "may grant any appropriate relief that conforms to the case made by the pleadings although it is not exactly the relief which has been asked for by the special prayer….  Under the prayer for general relief, the plaintiffs are entitled to such relief as is agreeable to the case made in the bill, though different from the specific relief prayed for."  *Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 567 (Pa.Super. 2004) (quoting *Meth v. Meth*, 360 Pa. 623, 626, 62 A.2d 848, 849 (1949)).  Although "'[a]n equity court may…grant broader relief than that specifically requested when there is a prayer for general relief[,]…that relief must be consistent with and agreeable to the case pleaded and proven.'"  *Thomas A. Robinson Family Limited Partnership v. Bioni*, 178 A.3d 839, 851, (Pa.Super. 2017), *appeal denied*, ___ Pa. ___, 194 A.3d 560 (2018) (quoting *Karpieniak v. Lowe*, 747 A.2d 928, 931 (Pa.Super. 2000) (vacating decree that granted relief which was neither requested in complaint nor proved at trial)).

"Generally, the trial court will resolve a declaratory judgment action involving an insurance coverage dispute on summary judgment."  *Kiely on Behalf of Feinstein v. Philadelphia Contributionship Insurance*

*Company*, 206 A.3d 1140, 1145 (Pa.Super. 2019) (citing ***Donegal Mut. Ins.***

***Co. v. Baumhammers***, 595 Pa. 147, 938 A.2d 286 (2007) (reiterating that

interpretation of insurance contract on coverage issues is generally performed

by court)).  Our standard of review of an order granting summary judgment

requires us to determine whether the trial court abused its discretion or

committed an error of law.  ***Mee v. Safeco Ins. Co. of America***, 908 A.2d

344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration.  Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.  Similarly, the trial court abuses its discretion if it does not follow legal procedure.

***Miller v. Sacred Heart Hospital***, 753 A.2d 829, 832 (Pa.Super. 2000)

(internal citations and quotation marks omitted).  Our scope of review is

plenary.  ***Pappas v. Asbel***, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001),

*cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002).

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact.  We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.  Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.  All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of

action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***Chenot v. A.P. Green Services, Inc.***, 895 A.2d 55, 61 (Pa.Super. 2006)

(internal citations and quotation marks omitted).

Section 1738 of the MVFRL governs stacking of UM/UIM benefits in automobile insurance policies and the option to waive stacking, and provides in pertinent part:

**§ 1738. Stacking of uninsured and underinsured benefits and option to waive**

**(a) Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

**(b) Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages

in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

**(c) More than one vehicle.**—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S.A. § 1738(a)-(c). Under Section 1738, "stacked UM/UIM coverage is the default coverage available to every insured and provides stacked coverage on all vehicles and all policies." *Gallagher v. GEICO Indemnity Company*, ___ Pa. ___, ___, 201 A.3d 131, 137 (2019).

Under the MVFRL, insureds can choose to waive stacked coverage. If an insured decides to waive stacked coverage, then the insured's premiums must be reduced to reflect the different cost of coverage. Importantly, the MVFRL makes clear that to effectuate a waiver of UM/UIM coverage, an insurer must provide the insured with a statutorily-prescribed waiver form, which the named insured must sign if he wishes to reject the default provision of stacked coverage. This waiver provision has the salutary effect of providing insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver.

*Id.* (internal citations omitted).

[A]n insurance company must offer an insured the opportunity to waive stacking of UIM coverage limits whenever [he] purchases UIM coverage "for more than one vehicle under a policy." [75 Pa.C.S.A.] § 1738(c). If an insurance company does not obtain a stacking waiver at that time, the amount of UIM coverage available to an insured is "the sum of the limits for each motor vehicle as to which the injured person is an insured." [75 Pa.C.S.A. §] 1738(a).

- 13 -

***Barnard v. Travelers Home and Marine Insurance Company***, ___ Pa.

___, ___, 216 A.3d 1045, 1051 (2019).

> [U]nder a plain meaning analysis of Subsection 1738(c), an insured purchases UIM coverage when [he] pays to acquire UIM coverage "for more than one vehicle under a policy." 75 Pa.C.S.[A.] § 1738(c). [N]othing in Subsection 1738(c) limits the term "purchase" to an insured's initial purchase of an insurance policy. Rather, the subsection requires the execution of a new stacking waiver any time an insured pays to obtain UIM coverage for multiple vehicles, regardless of whether this acquisition occurs when an individual initially applies for insurance, or when [he] subsequently pays to obtain additional UIM coverage.

***Id.*** at ___, 216 A.3d at 1051-52.

This Court has held an insurer must offer an insured the opportunity to execute a new waiver of stacked UM/UIM coverage when the insured adds another automobile to an existing policy. ***Pergolese v. Standard Fire Insurance Co.***, 162 A.3d 481, 490 (Pa.Super. 2017), *appeal denied*, 643 Pa. 113, 172 A.2d 590 (2017). The addition of another vehicle to an existing policy constitutes a purchase under Section 1738(c). ***Id.*** (explaining: addition of vehicle, which is not replacement vehicle, to insurance policy constitutes "purchase" for Section 1738 purposes and requires execution of new UM/UIM stacking waiver). ***Accord Bumbarger v. Peerless Indem. Ins. Co.***, 93 A.3d 872, 879 (Pa.Super. 2014) (*en banc*) (stating: addition of vehicle to existing insurance policy compels new execution of valid UM/UIM stacking waiver; even if after-acquired automobile clause applied, new stacking waiver would still be required for addition of vehicle to policy, where after-acquired

automobile clause in policy makes clear distinction between "the burden placed on an insured to 'add-on' a vehicle versus 'replace' a vehicle under an existing insurance policy. While the former requires notice to the insurer, the latter does not as the policy extends coverage automatically for replacement vehicles"). An insurer's failure to provide an insured with a new UM/UIM stacking waiver form when required statutorily entitles the insured to the default of stacked UM/UIM benefits under the policy. **Id.** at 879; **Pergolese, supra** at 491.

Instantly, the trial court addressed Appellant/Cross-Appellee Kline's claim for stacked UIM coverage under his Policy, in part, as follows:

> In this case, [Appellant/Cross-Appellee Kline] acquired an insurance policy with [Travelers] on August 9, 2002. The Policy covered one vehicle at its inception, a 1999 Pontiac Grand Prix. [Appellant/Cross-Appellee Kline] signed a rejection of stacking waiver form the same day. In 2007, [Appellant/Cross-Appellee Kline] added a 2001 Pontiac Montana to the Policy, at which time an amended declaration sheet was issued. [Appellant/Cross-Appellee Kline] was not presented with a new stacking rejection form. Approximately four years later, [Appellant/Cross-Appellee Kline] added a 2003 Pontiac Vibe to the Policy, at which time an amended declaration sheet was issued. Again, [Appellant/Cross-Appellee Kline] was not presented with a new stacking rejection form.
>
> …[T]his [c]ourt is inclined to follow the Superior Court's most recent binding decision, **Pergolese**, as closely as possible. This inclination is buttressed by…the direction of the Superior Court's non-precedential opinion in **Newhook**. … As such, the appropriate starting point for our analysis is the two-pronged inquiry employed by the **Bumbarger** Court. Specifically, we must consider (1) how [Appellant/Cross-Appellee Kline's] new vehicles were added onto the Policy (*i.e.*, via endorsements or an after-acquired

- 15 -

vehicle clause); and (2) the specific language of Section J as it relates to this issue.

Here, as in **Bumbarger**…and **Pergolese**, [Appellant/Cross-Appellee Kline] notified [Travelers] each time he acquired an additional vehicle. [Travelers] subsequently generated amended declaration sheets in conjunction with [Appellant/Cross-Appellee Kline]'s notification. On both occasions, [Appellant/Cross-Appellee Kline]'s premium increased to reflect the additional vehicles. … Based on the foregoing, it appears that [Appellant/Cross-Appellee Kline]'s vehicles were added to the Policy *via* endorsements and were covered by the general terms of the Policy as opposed to the after-acquired vehicle clause. …

… Based on the holdings in **Bumbarger** and **Pergolese**, we therefore conclude that [Appellant/Cross-Appellee Kline]'s vehicles were covered by the general terms of the Policy and not the after-acquired vehicle clause. Based on [Appellant/Cross-Appellee Kline]'s premium increasing at the time the vehicles were added to the Policy, we further hold that [Appellant/Cross-Appellee Kline] made "purchases" for purposes of [Section] 1738. In reaching these conclusions, we are under no obligation to determine whether the language of Section J constitutes finite or continuous coverage. **See Pergolese, supra**. Accordingly, [Travelers], as a matter of law, failed its obligation to obtain new stacking waiver from [Appellant/Cross-Appellee Kline] at the time the 2001 Pontiac Montana and the 2003 Pontiac Vibe were added to the Policy.

(Trial Court Opinion at 20-22). The record supports the court's rationale. **See Chenot, supra**. The trial court correctly determined Appellant/Cross-Appellee Kline is entitled to pursue stacked UIM benefits under his Policy. **See Bumbarger, supra**; **Pergolese, supra**.

Moreover, contrary to Travelers' perception, the trial court did not rely on **Newhook** as dispositive precedent. Rather, the court looked to **Newhook** only for guidance on how this Court was applying established law. Instead,

the trial court correctly relied upon the most recent, binding decisions applicable to Appellant/Cross-Appellee Kline's claim for stacked UM/UIM benefits under his Policy.[1]  **See Commonwealth v. Martin**, 205 A.3d 1247 (Pa.Super. 2019) (stating courts are bound by existing precedent and continue to follow controlling precedent unless that precedent is overturned by our Supreme Court).

Nevertheless, Appellant/Cross-Appellee Kline's declaratory judgment complaint included no request for a specific award of money damages or general prayer for relief.  **See Omicron Systems, Inc., supra**.  Additionally, the parties' cross-motions for summary judgment addressed only Appellant/Cross-Appellee Kline's potential for stacked UIM benefits under his Policy and his mother's policy.  The parties neither requested nor proved a specific amount of damages actually due to Appellant/Cross-Appellee Kline.  **See Thomas A. Robinson Family Limited Partnership, supra**.  Thus, the trial court exceeded its authority when it entered a money judgment in favor of Appellant/Cross-Appellee Kline and against Travelers in the specific amount of $100,000.00, plus interest and costs.  **See Murphy, supra**.  The cumulative amount of stacked UIM benefits possible under Appellant/Cross-Appellee Kline's policy was $150,000.00.  **See** 75 Pa.C.S.A. § 1738(a);

_____

[1] We reject outright both parties' recommendations that federal court decisions are binding on this Court.  **See Eckman v. Erie Ins. Exchange**, 21 A.3d 1203, 1207 (Pa.Super. 2011) (reiterating this Court is not bound by federal court decisions, other than U.S. Supreme Court).

*Barnard, supra*. In light of the $50,000.00 Travelers already tendered to Appellant/Cross-Appellee Kline, when he first made a claim for UIM benefits under his Policy, an additional $100,000.00 in stacked UIM benefits remains available to him under his Policy, if and when he pleads and proves his damages. Accordingly, we affirm the court's December 18, 2018 decision in favor of Appellant/Cross-Appellee Kline regarding his right to stacked UIM coverage under his Policy but vacate the judgment for money damages.

In his issue on appeal, Appellant/Cross-Appellee Kline argues he is also entitled to stacked UIM benefits under his mother's automobile insurance policy, despite the household vehicle exclusion clause contained in her policy. Appellant/Cross-Appellee Kline asserts the Pennsylvania Supreme Court in *Gallagher* recently held household vehicle exclusions in automobile insurance policies violate the MVFRL and are unenforceable as a matter of law. Appellant/Cross-Appellee Kline maintains Travelers failed to obtain the necessary stacking waivers from him, while the household exclusion provision in his mother's separate policy acted as a *de facto* waiver of stacking in her policy, even though she had elected stacked UIM coverage on her policy. Appellant/Cross-Appellee Kline concludes this Court should vacate the trial court's order to the extent it granted summary judgment in favor of Travelers on Appellant/Cross-Appellee Kline's claim for stacked UIM benefits under his mother's automobile insurance policy. In response, Travelers contends *Gallagher* should not apply retroactively to the court's decision on Ms. Kline's

policy. We agree with Appellant/Cross-Appellee Kline's position and disagree with Travelers' contention.

Regarding retroactive application of a recent development in the law:

> The general rule in Pennsylvania is that appellate courts apply the law in effect at the time of appellate review. This means that we adhere to the principle that a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur[] before the judgment becomes final. However, this general rule is not applied rotely. Whether a judicial decision should apply retroactively is a matter of judicial discretion to be decided on a case-by-case basis. To determine whether a decision should have retroactive effect, a court should first determine whether the decision announced a new rule of law. If the decision announced a new rule, the court should then consider whether: (1) retroactive effect will further or hinder the purpose of the new rule; (2) the parties will be unfairly prejudiced because they relied on the old rule; and (3) giving the new rule retroactive effect will detrimentally affect the administration of justice.

***Passarello v. Grumbine***, 624 Pa. 564, 601-02, 87 A.3d 285, 307 (2014) (internal citations and quotation marks omitted).

> Courts have recognized four approaches to determining what "retroactive effect" a decision should be given. Each approach varies in scope and touches an increasingly wider set of cases.
>
> > One approach is to give the new rule purely prospective effect so that it is not even applied to the parties in the case in which the new rule is announced. Another approach is to limit retroactive application to the case in which it is announced. A third choice is to apply the new rule to the case in which it is announced and to all cases pending at the time the new rule is announced. A fourth approach is to give the new rule fully retroactive effect. Under this fourth choice, the new rule is applied to the case in which it is announced, to all cases pending at the time the new

rule is announced, and to cases which are final at the time the new rule is announced.

Pennsylvania follows the third approach. Therefore, when a case is given "retroactive" application in this Commonwealth, it only affects future cases and cases that are pending at the time the new rule is announced. Moreover, of those pending cases, only cases that have preserved the issue decided in the new case will benefit from the new rule. Accordingly, a decision in one case will not affect preceding cases fully disposed of at the time the new rule is announced. Judicial discretion in this area is guided by consideration of the following three factors:

(1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect on the administration of justice by the retroactive application of the new rule.

***Davis ex rel. Davis v. Government Employees Inc. Co.***, 775 A.2d 871, 874-75 (Pa.Super. 2001), *appeal denied*, 571 Pa. 706, 812 A.2d 1230 (2002) (internal citations omitted). Importantly, in this context of retroactivity, our Supreme Court has made clear:

There can be no change to statutory law when there has been no amendment by the legislature and no prior decision by this Court. Only the legislature has the authority to promulgate legislation. Our role is to interpret statutes as enacted by the Assembly. We affect legislation when we affirm, alter, or overrule our prior decisions concerning a statute or when we declare it null and void, as unconstitutional. Therefore, when we have not yet answered a specific question about the meaning of a statute, **our initial interpretation does not announce a new rule of law**. Our first pronouncement on the substance of a statutory provision is purely a clarification of an existing law.

***Fiore v. White***, 562 Pa. 634, 644, 757 A.2d 842, 848 (2000) (emphasis added). "As such, the [Supreme] Court's construction of the statute is

considered a part of the statute from the effective date of the statute and does not operate in an unlawful retroactive fashion." **Commonwealth v. Infante**, 63 A.3d 358, 364 (Pa.Super. 2013). **See also Commonwealth v. Concordia**, 97 A.3d 366, 369 (Pa.Super. 2014), *appeal denied*, 633 Pa. 753, 125 A.3d 775 (2015) (citing **Fiore, supra**) (stating same).

In **Gallagher**, our Supreme Court determined household vehicle exclusions operate as *de facto* waivers of the stacked UM/UIM coverage and operate to deprive insureds of the stacked UIM coverage they have purchased or the default stacked coverage the insureds have not expressly waived. **Gallagher, supra** at ___, 201 A.3d at 138. Our Supreme Court explained:

> One of the insurance industries' age-old rubrics in this area of the law is that an insured should receive the coverage for which he has paid. Here, GEICO argues against this maxim by invoking the household vehicle exclusion to deprive Gallagher of the stacked UIM coverage that he purchased. This action violates the clear mandates of the waiver provisions of Section 1738. Indeed, contrary to Section 1738's explicit requirement that an insurer must receive an insured's written acknowledgement that he knowingly decided to waive UM/UIM coverage, the household vehicle exclusion strips an insured of default UM/UIM coverage without requiring an insurer to demonstrate, at a bare minimum, that the insured was even aware that the exclusion was part of the insurance policy. This practice runs contrary to the MVFRL and renders the household vehicle exclusion invalid and unenforceable. …[H]ousehold vehicle exclusions should not and cannot operate as a pretext to avoid stacking.
>
> … There simply is no reason that insurers cannot comply with the Legislature's explicit directive to offer stacked UM/UIM coverage on multiple insurance policies absent a knowing Section 1738 waiver and still be fairly compensated for coverages offered and purchased.

*Id.* (internal citations omitted) (holding household vehicle exclusion provisions violate MVFRL and are unenforceable as matter of law; "the Legislature is free to alter the MVFRL to allow this type of exclusion; however, given the MVFRL's conspicuous silence regarding the household vehicle exclusion, we are bound to follow the plain language of Section 1738"). *Id*. at ___ n.7, 201 A.3d at 138 n.7. *Gallagher* represents "the first majority opinion of the Pennsylvania Supreme Court to address whether a household exclusion 'acts as a *de facto* waiver of stacked [UM/]UIM coverage.'" *Butta v. GEICO Casualty Company*, 383 F.Supp.3d 426, 437 (E.D.Pa. 2019).

Instantly, the Pennsylvania Supreme Court in *Gallagher* did not announce a new rule of law. *See Fiore, supra*. Thus, the *Gallagher* decision applies to the present case, which was pending on appeal when our Supreme Court decided *Gallagher*. Moreover, the parties argued the enforceability of the household vehicle exclusion in Ms. Kline's policy. *See Passarello, supra*; *Davis ex rel. Davis, supra*. Under *Gallagher*, the household vehicle exclusion in Ms. Kline's automobile insurance policy is unenforceable as a matter of law, where she purchased stacked coverage. *See Gallagher, supra*. Therefore, Appellant/Cross-Appellee Kline can make a claim for additional stacked UIM benefits under Ms. Kline's policy as well as his own policy for a combined $200,000.00 ($100,000.00 under Ms. Kline's policy and $100,000.00 under his own policy). *See* 75 Pa.C.S.A. § 1738(a); *Barnard, supra*. Accordingly, we reverse the trial court's December 18, 2018 decision

to the extent it granted summary judgment in favor of Travelers' on Appellant/Cross-Appellee Kline's claim for entitlement to stacked UIM benefits under his mother's separate policy.

Based upon the foregoing, we vacate the December 18, 2018 order in its entirety and remand for the trial court to enter an amended order granting summary judgment in favor of Appellant/Cross-Appellee Kline on his right to claim stacked UIM coverage under his Policy **and** under Ms. Kline's separate automobile insurance policy but without any award of money damages, which are still to be determined.

Order vacated; case remanded with instructions. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2019