J-S38016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DAN LEPORE & SONS COMPANY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LIBERTY MUTUAL FIRE INSURANCE | : | No. 378 EDA 2024 |
| COMPANY, SHEILANN P. HEWITT, | : | |
| STYLIADES MEZZANOTTE & HASSON | : | |

Appeal from the Order Entered December 19, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 200801668

BEFORE: STABILE, J., BECK, J., and STEVENS, P.J.E.*

MEMORANDUM BY BECK, J.: **FILED JANUARY 15, 2025**

Dan Lepore & Sons Company ("Lepore") appeals from the order entered by the Philadelphia County Court of Common Pleas ("trial court") granting the motion for summary judgment filed by Liberty Mutual Fire Insurance Company ("Liberty"), denying Lepore's motion for summary judgment, and directing that judgment be entered in favor of Liberty in the amount of $112,437.49.[1] Lepore argues that summary judgment was erroneously entered because there are genuine issues of material fact related to its breach of contract and

_____

* Former Justice specially assigned to the Superior Court.

[1] Sheilann P. Hewitt ("Hewitt"), and Styliades, Mezzanote & Hasson (the "Firm"), a law firm in Liberty's Corporate Law Division, are no longer parties to this action.

bad faith claims against Liberty based upon the terms of the workers' compensation and employer's liability insurance policy ("Policy"). Additionally, Lepore argues the trial court erred in finding that it owed money to Liberty for defending Lepore under the Policy. Upon review, we affirm.

Lepore is a masonry restoration and construction contractor. In 2015, Liberty issued the Policy to Lepore. The parties renewed the Policy in 2016. Relevantly, the Policy stated the following, regarding workers' compensation insurance:

> PART ONE – WORKERS COMPENSATION INSURANCE
>
> A. How This Insurance Applies
>
> This workers compensation insurance applies to bodily injury by accident…
>
> > 1. Bodily injury by accident must occur during the policy period.
>
> * * *
>
> C. We Will Defend –
>
> We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings, or suits. We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

Policy, 1/1/2015, at 2.

Under the Policy, the deductible amount for bodily injury by accident was $350,000 per claim. Pennsylvania Deductible Endorsement, 1/1/2015, at 1. The endorsement further explained the applicability of the deductible:

A.     How This Deductible Applies

  1.     Each Occurrence; Each Claim

  You are responsible, and you agree to reimburse us, up to the deductible amount shown above, for this total of:

  a. All benefits required of you by the workers compensation law … plus
  b. All sums you legally must pay as damages; plus
  c. All "allocated loss adjustment expense" as part of any claim or suit we defend;

  Because of (1) bodily injury by accident to your employees arising out of any one "occurrence"…

  We are responsible for those amounts of benefits, damages and "allocated loss adjustment expense" that exceed the applicable deductible amount shown above.   We will not seek reimbursement of those amounts from you; the premium for them will be determined in accordance with PART FIVE – PREMIUM of the policy.

  We may advance the part of all of the deductible amount used to settle any claim, proceeding or suit.  You will reimburse us promptly for any amount(s) we have so advanced.

* * *

C.     Definitions

  1. "Allocated loss adjustment expense" means claim adjustment expense directly allocated by us to a particular claim.  Such expense shall include, but shall not be limited to, attorneys' fees for claims in suit, court and other specific items of expense such as medical examination, expert medical or other testimony, laboratory and X-ray, autopsy, stenographic, witnesses and summonses, and copies of documents. …

D.     Conditions …

  2. <u>Your Duties</u>

- 3 -

> a. The first Named Insured shown in the Information Page agrees and is authorized on behalf of all Named Insureds to reimburse us for all deductible amounts that we advance.

*Id.* at 1-3.

In 2015 and 2016, during the policy periods under the Policy, Christopher Campana ("Campana") worked as a foreman for Lepore. Due to a slowdown in business, Campana accepted a voluntary layoff from Lepore, and subsequently submitted an unemployment compensation claim, which was approved by Lepore. In 2018, Campana filed three claim petitions against Lepore under the Pennsylvania Workers' Compensation Act.[2] Campana alleged that he suffered injuries on three separate occasions between 2015 and 2016. Upon receiving notice of the workers' compensation claims, Liberty assigned the matter to Hewitt, an attorney at the Firm. Hewitt took depositions, contacted an investigator to conduct surveillance, and consulted with an expert.

Campana's petition was initially assigned to Judge Andrea McCormick. Judge McCormick conducted hearings, but had not issued a decision when she was removed from her position based on claims of judicial misconduct in October 2018. The case was reassigned to Judge Sandra Craig. On February 14, 2019, Judge Craig found in favor of Campana and against Lepore. Judge Craig found that although Campana had not immediately filed reports of his

---

[2] 77 P.S. §§ 1-1041.4, 2501-2710.

injuries, she found that Lepore employees knew about the injuries. She ordered payment of the benefits at the statutory rate, medical expenses, costs of litigation, a $1,500 penalty and allocation of 17% of Campana's benefits to his counsel.

Lepore appealed the decision to the Workers' Compensation Appeal Board. However, before the appeal was decided, the parties agreed to a compromise and release agreement which included a lump sum to Campana of $186,750 and $38,250 to Campana's counsel, for a total settlement of $225,000. Following the settlement, Liberty sent Lepore deductible billing statements. Lepore did not pay all the invoiced amounts.

On August 20, 2020, Lepore initiated the instant proceedings by filing a complaint against Hewitt, the Firm, and Liberty and raised numerous claims, including bad faith, breach of contract, and professional negligence. After further proceedings not relevant to this appeal, on June 30, 2021, Lepore filed a third amended complaint, listing Liberty as the only defendant and raising claims of breach of contract and bad faith. In its breach of contract claim, Lepore averred Liberty materially breached the Policy by failing to provide an adequate defense of Campana's claims; utilizing the high deductible on the Policy to direct its defense obligations and placing its own interests above Lepore's interest, and hiring the attorneys of the Firm, which were controlled by Liberty, created a conflict of interest. Lepore also raised a bad faith claim. Liberty filed an answer and counterclaim. In the counterclaim, Liberty averred

that under the terms of the Policy, Lepore was responsible for a $350,000 deductible, and sought $114,442.20 for Lepore's unpaid deductible invoices.

The parties proceeded to discovery. Subsequently, both parties filed motions for summary judgment. Notably, as part of its motion for summary judgment, Liberty claimed that Lepore breached the terms of the Policy and owes Liberty $112,437.49, based on various credits it had paid. On December 19, 2023, the trial court granted Liberty's motion and denied Lepore's motion, and directed that judgment be entered in favor of Liberty in the amount of $112,437.49. Lepore filed an appeal on January 19, 2024.[3]

On appeal, Lepore raises the following questions for our review:

A. Whether the trial court abused its discretion and/or committed errors of law in granting [Liberty's] motion for summary judgment on all counts in the complaint where material facts still remain in dispute[?]

B. Whether the trial court abused its discretion and/or committed errors of law in holding that there was no liability to [Lepore] for its employee-lawyer's breach of duty to defend with care[?]

C. Whether the trial court abused its discretion and/or committed errors of law in holding that there was no claim for Bad Faith to [Lepore] for its employee[-]lawyer's breach of duty to defend with care[?]

---

[3] Lepore filed its notice of appeal thirty-one days after the order granting summary judgment was entered. This Court filed a rule to show cause, directing Lepore to show why the appeal should not be quashed. Lepore responded that the docket reflects that the trial court prothonotary issued notice on December 20, 2023. A review of the docket confirms Lepore's claim. It is well settled that the "date of entry of an order ... shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)." Pa.R.A.P. 108(b). Therefore, the appeal was timely filed and we will address Lepore's claims.

D. Whether the trial court abused its discretion and/or committed errors of law in holding that [Lepore] breached its duty to pay the monies expended to defend Lepore pursuant to the terms of the Policy[?]

Lepore's Brief at 5 (some capitalization omitted).

Our standard of review of an order granting a motion for summary judgment is as follows:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.
>
> Our scope of review of a trial court's order granting … summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Erie Ins. Exch. v. Eachus*, 306 A.3d 930, 932-33 (Pa. Super. 2023) (citation omitted).

"Additionally, we note that interpretation of an insurance policy presents a pure question of law, over which our standard of review is de novo." *Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87, 91 (Pa. Super. 2015) (citation omitted); *see also Kramer v. Nationwide Prop. & Cas. Ins. Co.*, 313 A.3d 1031, 1039 (Pa. 2024). "[W]e are not bound by the trial court's conclusions of law, but may reach our own conclusions." *Kline v. Travelers Personal Sec. Ins. Com.*, 223 A.3d 677, 686 (Pa. Super. 2019).

## Breach of Contract

We will address Lepore's first two claims together. Lepore contends that the trial court erred in granting summary judgment on its breach of contract claim. Lepore's Brief at 27, 31, 33. Lepore argues that Liberty's actions during the underlying workers' compensation case, its billing practices, and its decision to hire Hewitt and the Firm to defend the case established a breach of contract. *Id.* at 27, 34-35, 36-37. Lepore states that because it was responsible for paying the first $350,000 in the action, it sought to choose its own counsel to represent it in the workers' compensation action. *Id.* at 28, 34; *see also id.* at 35 (Lepore also indicated it sought to be part of the litigation process but was denied by Hewitt). Lepore claims Liberty rejected this offer "based on the Policy language" because it received the sole benefit of hiring Hewitt and the Firm, was able to handle the claims within the costs of the high deductible, and did not have to pay any out-of-pocket expenses. *Id.* at 28, 29, 34; *see also id.* at 33 (noting Liberty breached its duty to defend with care); *id.* at 28, 34 (asserting that Hewitt and the Firm generated revenue and profits for Liberty). Lepore argues that Liberty retaining its own "incompetent" attorneys and ostensibly paying itself created a conflict. *Id.* at 29, 34; *see also id.* at 30, 35 (noting that the final brief was submitted with typographical and factual errors, and failed to include key defenses, and Hewitt failed to call two key witnesses). To that end, Lepore alleges that Liberty exercised an unreasonable degree of control over the litigation. *Id.* at

29. Further, Lepore highlights that it was granted a change of counsel after a February 14, 2019 ruling in the workers' compensation case. *Id.* at 35. Lepore notes that its breach of contract claims are not premised upon any malpractice by Hewitt, and therefore did not require an expert to prove professional malpractice. *Id.* at 28, 29, 33, 35; *see also id.* (acknowledging that "its breach of contract claim did not arise out of professional malpractice" of the lawyers).

Additionally, Lepore contends there are genuine issues of material fact relating to the costs of litigation and what it owed to Liberty. *Id.* at 30. According to Lepore, the invoices were vague and contained minimal detail or itemized costs. *Id.* at 31-32, 36. Lepore also argues that Liberty added markups to each invoice, and labeled it a "variable expense." *Id.* at 31-32; *see also id.* at 32 (noting that it asked Liberty about the variable expenses, but never received a response).

> We review Lepore's arguments with the following in mind:
>
> Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Such intent is to be inferred from the written provisions of the contract. If doubt or ambiguity exists it should be resolved in the insured's favor.

*Sunoco (R&M), LLC v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 322 A.3d 930, 943 (Pa. Super. 2024) (citation omitted); *see also Kramer*, 313 A.3d at 1039. The obligation to defend is contractual in nature and is determined by the allegations of the complaint and the coverage provided by the insurance

policy. *Sunoco (R&M), LLC*, 322 A.3d at 943. "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Albert v. Erie Ins. Exch.*, 65 A.3d 923, 928 (Pa. Super. 2013) (citation omitted).

As noted above, the Policy stated that Liberty has "the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings, or suits." Policy, at 2. Further, Lepore agreed to reimburse Liberty "up to the deductible amount" of $350,000, including "attorneys' fees for claims in suit, court and other specific items of expense …." Pennsylvania Deductible Endorsement, at 1, 2.

Lepore does not establish what term of the Policy Liberty breached. To that end, Lepore acknowledges the terms of the Policy, including that Liberty would defend Lepore's workers' compensation claims and Lepore had a deductible of $350,000. It is well settled that in fulfilling its duty to defend Lepore, Liberty had the right to select counsel. *See, e.g., Eckman v. Erie Ins. Exch.*, 21 A.3d 1203, 1207 (Pa. Super. 2011) (noting that "duty to defend insurer has right to defend litigation and to select counsel") (citation and quotation marks omitted); *see also Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 131 A.3d 445, 456 (Pa. 2015) ("Where an insurer provides a defense, the insured is at risk of breaching the insurance contract if it rejects

the insurer's defense[,]" and the "insured is obliged to cooperate with the insurer defending the action.") (citations omitted). Furthermore, Lepore speculates, without any support, that Liberty was in breach of the Policy by hiring Hewitt and the Firm, and that it purposefully defended Lepore's claims up to the deductible limits. *See Krishack v. Milton Hershey Sch.*, 145 A.3d 762, 766 (Pa. Super. 2016) ("A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor").[4] Moreover, Lepore points to no terms in the Policy which established Liberty breached a duty to use "due care" in defending Lepore under the plain terms of the Policy.[5] *See Albert*, 65 A.3d at 928 (stating that appellant must establish that appellee breached a duty imposed by the contract). Lepore's bald, unsupported claim does not establish the trial court erred in granting summary judgment in favor of Liberty. *See Rock v. Rangos*, 61 A.3d 239, 262 (Pa. Super. 2013) (noting that to overcome the entry of summary judgment, appellant was required "to bridge the gap between his bald

---

[4] Lepore generally cites to a single page in the reproduced record to support its claim that Liberty rejected its offer to hire its own attorney to pay itself to represent Lepore. A review of the relevant page reveals an invoice from Liberty to Lepore regarding the workers' compensation case. There is no evidence on this page, nor does Lepore cite to anything, which establish it tried to hire its own attorney or Liberty rejected the offer.

[5] The trial court notes that "Lepore's breach of contract claim is based on whether Liberty should be held vicariously liable for its employee lawyer's alleged breach of duty to defend with due care." Trial Court Opinion, 12/19/2023, at 3 (unnumbered). Lepore does not raise any argument in support of finding Liberty vicariously liable.

- 11 -

allegations and a jury question"). Therefore, Lepore's conclusory allegations in this regard does not state a claim that Liberty breached its contractual duty to defend.

Additionally, on the record before this Court, we discern no error or abuse of discretion by the trial court in finding that Lepore failed to raise an issue of material fact related to the costs of litigation and Liberty's invoices. We observe that in its invoice to Lepore, Liberty indicated there were additional allocated expenses and adjusted charges, which totaled $262,895.39. Invoice, 12/2/2019, at 1. Once again, Lepore makes only bald allegations, and has not identified any error in the invoices or established any breach of a term in the Policy.[6] **See Rock**, 61 A.3d at 262. Finally, to the extent Lepore's claims implicate Hewitt and the firm's malpractice, we find such a claim waived, as Lepore did not raise it in the third amended complaint. **Steiner v. Markel**, 968 A.2d 1253, 1259-60 (Pa. 2009) (finding that failure to raise claim in complaint rendered it waived on appeal). Viewing the record in the light most favorable to Lepore, and resolving all doubts as to the existence of a genuine issue of material fact against Liberty, we conclude the trial court did not err as a matter of law or abuse its discretion in granting Liberty's motion for summary judgment on Lepore's claim for breach of contract.

---

[6] Furthermore, as noted infra, the record supports the amount Lepore owed Liberty under the terms of the Policy.

**Bad Faith**

In its third claim, Lepore argues that the trial court erred in granting summary judgment because there were genuine issues of material fact relating to its bad faith claim. Lepore's Brief at 37. Lepore contends that Liberty's bad faith included hiring the Firm and Hewitt to defend Lepore; failing to disclose they were employees of Liberty or any conflict of interest; defending Lepore up to the deductible limits; failing to allow Lepore hire its own counsel; sending invoices without a breakdown of costs, including invoices for unrelated matters; failing to communicate with Lepore; and noting that Hewitt and the Firm acted negligently. *Id.* at 38. According to Lepore, these issues present material issues of fact that warrant reversal of the grant of summary judgment. *Id.* at 38-39.

> Bad faith applies to those actions an insurer took when called upon to perform its contractual obligations of defense and indemnification or payment of a loss that failed to satisfy the duty of good faith and fair dealing implied in the parties' insurance contract. In order to recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis. Proof of an insurance company's motive of self-interest or ill-will is not a prerequisite to prevailing in a bad faith claim, though such evidence is probative of the second prong of the bad faith test.

*Berg v. Nationwide Mut. Ins. Co., Inc.*, 189 A.3d 1030, 1037 (Pa. Super. 2018) (citations, brackets, and quotation marks omitted).

An action for bad faith includes "all instances of bad faith conduct by an insurer." *Rancosky v. Washington Nat. Ins. Co.*, 130 A.3d 79, 94 (Pa.

Super. 2015) (citation omitted). This encompasses "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.* "Claims of bad faith are fact specific and depend on the conduct of the insurer toward its insured." *Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 547 (Pa. Super. 2020) (citation omitted).

Here, Lepore does not cite to any case law to support its argument and instead provides a list of Liberty's failings, without fully specifying how these actions constituted bad faith. *See* Pa.R.A.P. 2119(a) (noting that argument must be supported by citation to the record and pertinent authority). Indeed, Lepore fails to establish Liberty did not satisfy the duty of good faith and fair dealing implied in the Policy. Likewise, the alleged negligence by Hewitt and the Firm does not establish bad faith on the part of Liberty. *See generally Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. 2004) (An insurer's mere negligence does not constitute bad faith). Therefore, Lepore has not demonstrated that the trial court erred in granting summary judgment on its bad faith claim.[7]

---

[7] While Lepore refers to the trial court's indication that expert testimony is needed to support its bad faith claim, Lepore presents no argument to support this allegation. Thus, the claim is waived. *See Kaur v. Singh*, 259 A.3d 505, 511 (Pa. Super. 2021) (finding conclusory argument which was unsupported by any legal analysis to be waived).

**Counterclaim**

In its final claim, Lepore raises three separate arguments related to Liberty's counterclaim, which we will address in turn.

Discovery Violations

First, Lepore argues that Liberty's counterclaim should have been dismissed for repeated discovery violations. Lepore's Brief at 39-41. Lepore highlights that it sought written discovery on the counterclaim to establish the veracity of the invoices, but Liberty provided unverified responses and only provided two documents to support the bills. *Id.* at 41.

Here, Lepore cites a four-factor test for trial courts to apply when considering a sanction for a plaintiff's violation of discovery rules. *See id.* at 40 (citing *Croydon Plastics Co. v. Lower Bucks Cooling and Heating*, 698 A.2d 625, 629 (Pa. Super. 1997)). This Court, however, has distinguished between summary judgment cases and discovery sanctions cases. *See True R.R. Realty, Inc. v. McNees Wallace & Nurick, LLC*, 275 A.3d 490, 497-98 (Pa. Super. 2022); *Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832-33 (Pa. Super. 2000). Notably, in deciding whether an order granting summary judgment was proper, this Court found that the four-factor test for discovery sanctions does not discuss the summary judgment standard or establish whether plaintiffs have demonstrated a prima facie case. *Miller*, 753 A.2d at 832-33; *accord True R.R. Realty, Inc.*, 275 A.3d at 497. The Court concluded that "[b]ecause the court's order in this case was entered not as a

sanction for a procedural violation, but rather, to address a substantive deficiency of proof in [plaintiff's] cause of action, the order is properly subject to review only under [the summary judgment standard] and cases interpreting it." ***Miller***, 753 A.2d at 833; ***accord True R.R. Realty, Inc.***, 275 A.3d at 497.

As in ***Miller*** and ***True R.R. Realty, Inc.***, the parties filed motions for summary judgment to determine whether Liberty or Lepore breached the terms of the Policy. The discovery sanctions were not at issue in this case and the four-factor test in that regard is irrelevant to determine whether the trial court properly granted summary judgment in favor of Liberty. ***See Miller***, 753 A.2d at 832-33; ***accord True R.R. Realty, Inc.***, 275 A.3d at 497. Therefore, we find Lepore's discovery sanctions issue without merit.

<u>Damages Amount</u>

Lepore also argues that there is a material issue of fact relating to the breach of contract counterclaim. Lepore's Brief at 44. Lepore claims that Liberty failed to provide sufficient evidence to justify the amounts unpaid in the invoices and therefore failed to establish a connection between the breach of contract and damages. ***Id.*** at 45-46. Further, Lepore indicates that there was a claim not related to Campana's claims included in the statement of accounts. ***Id.*** at 45-46.

"A party seeking damages for breach of contract must be able to prove such damages with reasonable certainty." ***Printed Image of York, Inc. v.***

- 16 -

*Mifflin Press, Ltd.*, 133 A.3d 55, 59 (Pa. Super. 2016) (citation and brackets omitted). "[D]amages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." *Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Fam. Mkt., Inc.*, 98 A.3d 645, 661 (Pa. Super. 2014) (citation omitted). "The question of whether damages are speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages." *Printed Image of York, Inc.*, 133 A.3d at 60 (citation omitted).

Here, as noted above, the Policy had a deductible of $350,000, and Lepore agreed to reimburse Liberty "up to the deductible amount" of $350,000, including "attorneys' fees for claims in suit, court and other specific items of expense …." Pennsylvania Deductible Endorsement, at 1, 2. The record reflects that Liberty paid Campana and his attorneys a total of $225,000 to settle the workers' compensation claims. On December 2, 2019, Liberty sent an invoice to Lepore for $262,895.39. Invoice 12/2/2019. In a subsequent email to Lepore, Liberty provided a breakdown of credits and reimbursement it was due, noting that Lepore had paid $110,724.10 to Liberty on the Campana claims. Email, 2/3/2020. Liberty sent two invoices in February and April 2020, detailing further fees, costs, and expenses owed by Lepore. Invoice, 4/2/2020; Invoice, 2/2/2020. As a result, Lepore owed a total of $265,675.39. *See id.* Subsequently, Kayla Ellis ("Ellis"), a senior

receivables analyst at Liberty, sent Lepore a statement of account on May 16, 2022, detailing that Lepore was owed credits totaling $153,237.90. Statement of Account, 5/16/2022. Therefore, Lepore's unpaid balance was $112,437.49.

Liberty proved damages related to Lepore's breach of the terms of the Policy. *See Vinculum, Inc. v. Goli Techs., LLC*, 310 A.3d 231, 249 (Pa. 2024) ("It is beyond cavil that breach of contract damages are intended to place the non-breaching party nearly as possible in the same position it would have occupied had there been no breach.") (citation, brackets, and quotation marks omitted). Lepore takes issue with the costs and fees expended by Liberty in defending the worker's compensation claims, the purported lack of detail in the invoices and statements of account, and the inclusion of another claim in the statement of accounts, but does not establish the damages due were speculative or vague. Indeed, Lepore does not dispute the settlement amount or the terms of the Policy, which indicates it must pay attorneys' fees in conjunction with the duty to defend. Therefore, in light of this record, and the paucity of Lepore's argument, its claims in this regard are without merit.

## Corporate Designee

Additionally, Lepore asserts that Liberty failed to produce an appropriate corporate designee to confirm its counterclaim allegations under Pa.R.Civ.P. 4007.1, Procedure in Deposition By Oral Examination. Lepore's Brief at 42, 44. Lepore notes that Ellis had limited information on the counterclaim and

could not offer testimony in response to most of the questions presented to her. *Id.* at 42-43. Lepore claims that Ellis testified to Liberty's damages, but could not provide any basis, context, or information on the allocated expenses or paid losses stated in the invoices. *Id.* at 43-44, 45, 46. Lepore concludes that there are "genuine issues of material fact still existing in determining whether the [c]ounterclaim should have been dismissed for the discovery violations." *Id.* at 46.

Lepore again raises discovery claims without establishing the standard of review for a motion for summary judgment. *See Miller*, 753 A.2d at 832-33; *accord True R.R. Realty, Inc.*, 275 A.3d at 497. To the extent Lepore argues that the damages could not be proven absent Ellis' testimony, it ignores the various statements of account and invoices provided by Liberty. As noted above, Lepore has not established that the damages were speculative or vague. Therefore, its claim is without merit.

## Conclusion

In light of the foregoing, we affirm the trial court's order granting Liberty's motion for summary judgment and awarding Liberty $112,437.49.[8]

Order affirmed. Application to strike denied as moot.

_____

[8] During the pendency of this appeal, Liberty filed an application to strike portions of the reproduced record that are not in the certified record or were duplicative, and to disregard any references to such materials in the appellate brief. Application to Strike, 8/15/2024, at 2-4. Based upon our resolution of the case, and our reliance solely on the certified record on appeal, we deny the application as moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 1/15/2025