J-A14036-22

2022 PA Super 131

| | | |
|---|---|---|
| BRYAN D. KOCH, EXECUTOR OF THE ESTATE OF RHEA LYNN KOCH, DECEASED, AND BRYAN D. KOCH, IN HIS OWN RIGHT | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| PROGRESSIVE DIRECT INSURANCE COMPANY | : : : : | No. 1302 MDA 2021 |
| Appellant | : | |

Appeal from the Order Entered September 14, 2021
In the Court of Common Pleas of Berks County Civil Division at No(s):
19-2281

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                **FILED: AUGUST 4, 2022**

Progressive Direct Insurance Company ("Progressive Direct") appeals the order entered by the Court of Common Pleas of Berks County denying its motion for summary judgment and granting the cross motion for summary judgment filed by Appellee Bryan D. Koch, in his capacity as Executor of the Estate of Rhea Lynn Koch and in his own right.   After careful review, we reverse the trial court's order.

On June 7, 2015, Bryan Koch ("Koch") was driving his 2013 Harley Davidson motorcycle while his wife, Rhea Lynn Koch ("Mrs. Koch") was riding with him as a passenger.  Their motorcycle was struck by a 1997 Ford Explorer driven by Sean Eyrick, who was later determined to be driving under the

---

[*] Former Justice specially assigned to the Superior Court.

influence of alcohol when the accident occurred. Mrs. Koch was killed in the accident and Koch suffered injuries that required the amputation of his left leg above his knee.

The parties do not dispute that Eyrick was solely at fault for causing the accident. Ultimately, Koch decided to settle the claims against Eyrich for his available policy limits of $15,000.00 for each plaintiff.[1] The damages that Koch sustained from the accident in relation to the fatal injuries of his wife, Rhea Koch, and the injuries he sustained in his own right exceeded the liability coverage of Eyrich, who was an underinsured motorist (UIM).

At the time of the accident, Koch's motorcycle had been insured by Progressive Direct under a policy which provided bodily injury coverage of $100,000 each person and $300,000 each accident. Koch presented a demand to Progressive Direct for bodily injury and UIM benefits. Progressive Direct refused to pay the requested UIM benefits based on its allegation that Koch had signed a waiver form rejecting UIM coverage.[2]

---

[1] Eyrick was charged with homicide by vehicle while driving under the influence and other related charges in connection with this accident.

[2] We note the Kochs had separate policies with Erie Insurance Co. ("Erie") for their household automobiles. Before the instant action was filed, Erie filed a declaratory judgment action seeking a determination that UIM coverage was not available under the Erie automobile policy for the accident at issue in this case because the Koch had rejected UIM coverage under the Progressive Direct motorcycle policy. On June 17, 2020, the trial court consolidated the Erie litigation with this case for the purposes of discovery and trial.

However, we note that complete consolidation of the Erie and Progressive Direct litigation did not occur because the actions lack complete identity of parties or claims. *See Malanchuk v. Tsimura*, 635 Pa. 488, 497,

*(Footnote Continued Next Page)*

- 2 -

On September 9, 2019, Koch filed this breach of contract action, individually and as executor of the Estate, asserting that Progressive Direct had breached the insurance policy by failing to properly and timely evaluate the claim and pay the insured's UIM policy limits. Koch claimed that he as an individual and the Estate were each entitled to available UIM benefits in the amount of $100,000.00.

While the complaint sounded in breach of contract, Koch specifically requested that the trial court make "a determination of the availability of UIM coverage to [the Kochs] under the Progressive Direct Insurance Company policy covering the motorcycle [Koch] was operating" at the time of the June 7, 2015 accident. Complaint, at ¶ 19.

On February 25, 2021, Progressive Direct filed a motion for summary judgment, alleging Koch had originally rejected UIM coverage in the inception of a policy held by Progressive Halcyon Insurance Co. that was issued in February 2004 for Koch's 2002 Honda motorcycle. While Progressive Halcyon changed its name to Progressive Direct on June 9, 2006, Koch maintained a policy with this company for various motorcycles. Progressive Direct argued that Koch's rejection of UIM coverage in 2004 was still effective and carried forward through the addition and deletion of different motorcycles to the policy as Koch never affirmatively changed this designation rejecting UIM coverage.

---

137 A.3d 1283, 1288 (2016) (finding that "complete consolidation (or merger or fusion of actions) does not occur absent a complete identity of parties and claims; separate actions lacking such overlap retain their separate identities and require distinct judgments").

- 3 -

On March 29, 2021, Koch filed a cross motion for summary judgment, seeking an order declaring that UIM coverage is available under Koch's Progressive Direct policy in the amount of $200,000.00. Cross-Motion for Summary Judgment, at 2. In support of this motion, Koch presented evidence of a telephonic conversation he had with a representative of Progressive Direct, on or about August 20, 2014, nine months before the accident, during which he sought to purchase additional coverage for his 2013 Harley Davidson motorcycle. The relevant portions of that conversation were as follows:

> [Koch:] uh, I just had a, a friend who was in a bad accident years ago, and he told me, you know, a lot of times on the coverage you've got basic coverage, but it doesn't really cover a whole lot in terms of hospital, and maybe other things. What, uh, even at the 1,500 where I'm at, what, are there things I should be adding to that policy to, uh, not just to insure the bike, but if you were ever hospitalized for an extended period of time, things like that?

> [Progressive Direct representative:] Definitely. So, um, I'm not licensed in the state of Pennsylvania, but I can kinda go over what coverages that we offer in your state.

Recorded Conversation of Koch and Progressive Direct representative, lines 94-99.

> The conversation continued on to include the following discussion:

> [Progressive Direct representative:] You also don't have uninsured motorist coverage. That's for if, you know, if somebody else causes an accident, and injures you or your bike, they would pay for all your injuries and damages. But if they are not responsible and they don't have insurance, then you …

> [Koch:] You're stuck.

[Progressive Direct representative:] … you're stuck with, um, everything on your own. Unless you have the uninsured motorist coverage here.

[Koch:] M'kay.

[Progressive Direct representative:] So you do have that option. So it's like you're kinda paying for somebody else not to be responsible.

[Koch:] Yeah.

[Progressive Direct representative:] But you're protecting yourself.

[Koch:] Yeah.

Recorded Conversation of Koch and Progressive Direct representative, lines 128-145.

At the conclusion of this conversation, Koch added uninsured motorist (UM) coverage to his policy in the amount of $100,000 each person and $300,000 per accident. The Progressive Direct representative never discussed the availability of underinsured motorist (UIM) coverage.

On September 14, 2021, the trial court entered an order granting summary judgment in favor of Koch and denied Progressive's motion for summary judgment. The trial court found the Progressive Direct representative "misled [Koch] and created an incongruous uninsured motorist coverage and underinsured motorist coverage selection process" when she discussed UM protection but failed to advise Appellant of the option of UIM coverage in response to his inquiry about purchasing additional coverage. Trial Court Opinion (T.C.O.), 9/14/21, at 4.

- 5 -

As a result, the trial court concluded that Appellant had not made a "knowing waiver" of UIM coverage and found the Rejection of UIM form that Koch signed in 2004 during the inception of the policy was void pursuant to the Motor Vehicle Financial Responsibility Law (MVFRL). Further, the trial court determined that there is a total of $200,000.00 of available UIM coverage under Koch's policy in place at the time of the accident. This timely appeal followed.

Progressive Direct raises the following claims for our review on appeal:

1. Whether a rejection of underinsured motorist coverage made at the delivery of the policy remains valid until affirmatively changed by the insured.

2. Whether the telephone conversation between the Progressive representative and [Koch], discussing different coverages, created a duty on behalf of Progressive to advise [Koch] about underinsured motorist coverage.

3. Whether the trial court erred in finding that the Progressive representative's failure to offer underinsured motorist coverage to [Koch] required reformation of the policy to allow for underinsured motorist coverage?

Progressive's Brief, at 6.

Before reaching the merits of these arguments, we must determine whether this appeal is properly before this Court, as the "appealability of an order directly implicates the jurisdiction of the court asked to review the order." *Schmitt v. State Farm Mut. Auto. Ins. Co.*, 245 A.3d 678, 681 (Pa.Super. 2021) (quoting *Knopick v. Boyle*, 189 A.3d 432, 436 (Pa.Super. 2018) (internal citation omitted)). As such, "this Court has the power to inquire at any time, *sua sponte*, whether an order is appealable." *Knopick*,

189 A.3d at 436 (quoting *In re Estate of Considine v. Wachovia Bank*, 966 A.2d 1148, 1151 (Pa.Super. 2009)).

It is well-established that "[i]n this Commonwealth, an appeal may only be taken from: 1) a final order or one certified by the trial court as final; 2) an interlocutory order as of right; 3) an interlocutory order by permission; or 4) a collateral order." *Estate of Considine*, 966 A.2d at 1151.

Our rules of appellate procedure provide that parties have the right to file an appeal from a final order, which is defined as any order that: "(1) disposes of all claims and of all parties; (2) is expressly defined as a final order by statute; or (3) is entered as a final order pursuant to subdivision (c) of this rule." Pa.R.A.P. 341(a), (b)(1)-(3). An appeal may also be taken from "an order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties." Pa.R.A.P. 311(a)(8).

Section 7532 of the Declaratory Judgments Act states, in pertinent part:

> [c]ourts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. ... The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S.A. § 7532.

As noted above, Progressive Direct appealed the trial court's order which granted Koch's motion for summary judgment and declared that the UIM form produced by Progressive Direct was void under the MVFRL and that there was $200,000.00 of UIM benefits available to Koch under his Progressive Direct

policy. While Koch's complaint sounded in breach of contract, he had requested that the trial court make an express determination on whether UIM coverage was available under the Progressive Direct policy. Both parties requested this determination in their motions for summary judgment.

Our Supreme Court recently set forth the following two-part test to apply when determining whether an order declaring the rights of parties is final and appealable:

> (1) what is the effect of the lower court's decision on the scope of the litigation; and (2) what practical effect does the court's decision have on the ultimate outcome of the case. ... If the order in question merely narrows the scope of the litigation and does not resolve the entirety of the parties' eligibility for declaratory relief, then the order is interlocutory and not immediately appealable.

**Pennsylvania Manufacturers' Assoc. Ins. Co. v. Johnson Matthey, Inc.**, 647 Pa. 85, 188 A.3d 396 (2018).

In **Schmitt**, this Court quashed as interlocutory State Farm's appeal from the trial court's order which resolved the plaintiff's declaratory judgment claims and determined that the plaintiff's insurance policy entitled him to UIM benefits. This Court found that the appeal was improper upon summary judgment on the issue of coverage as the trial court had not yet resolved the claims seeking to determine the plaintiff's claims related to damages. **Schmitt**, 245 A.3d at 686.

This case, however, is distinguishable as the trial court determined in its order that $200,000.00 of UIM benefits are available under Koch's policy with Progressive Direct as defined by the policy limits. In response to this

Court's rule to show cause as to why this appeal should not be quashed, Progressive Direct agreed to stipulate that Koch would be entitled to the maximum UIM coverage of $100,000 each for the Estate and Koch individually if this Court affirmed the trial court's decision with respect to coverage. Progressive Direct also points out that any award or judgment in excess of the UIM coverage limits would be molded to the available UIM coverage. **See Marlette v. State Farm**, 57 A.3d 1224 (Pa.Super. 2012).

As the trial court's order granting summary judgment declared that Koch was entitled to $200,000.00 of UIM benefits available under the Progressive Direct Policy, we may characterize the order as final and appealable as there is no legal theory upon which Progressive Direct could prevail. Since the order resolved Koch's breach of contract action for all practical purposes,[3] we conclude that this appeal is properly before this Court.

On the merits of this appeal, Progressive Direct argues that the trial court erred in finding that Koch was entitled to UIM coverage under the Progressive Direct policy and that the Underinsured Motorist Protection (UIM) form produced by Progressive Direct is void pursuant to the MVFRL.

Specifically, Progressive Direct claims that the trial court essentially determined that Progressive Direct should have required Koch to sign a new Rejection of UIM coverage form in light of the conversation that Koch had with the Progressive Direct representative on August 20, 2014. Progressive Direct

---

[3] The only issue left for the trial court to resolve is the amount of delay damages, which could not be made until the parties' action had been resolved.

asserts that the original rejection form that Koch had signed waiving UIM coverage at the initial delivery of the policy in 2004 remained valid at the time of the accident.

In response, Koch argues that the rejection form he signed in 2004 cannot serve as the basis for a valid denial of UIM coverage under his Progressive Direct Policy. Koch asserts that when he contacted the Progressive Direct representative in 2014, stated his desire to purchase additional coverage, and added UM coverage, he affirmatively changed his previous rejection of UM/UIM protection made at the time of the delivery of the policy.

Koch faults the Progressive representative for failing to advise him about the availability of UIM coverage when he specifically asked what coverage was available. Koch alleges that, had the Progressive Direct representative discussed the differences between UI and UIM coverage, Koch would have purchased both UI and UIM coverage.

As an initial matter, we note that to the extent that the trial court found the Progressive Direct representative "misled" Koch when she advised him about the availability of uninsured motorist coverage but did not discuss the option of underinsured motorist protection, Koch's complaint does not seek to find Progressive Direct liable on a tort theory of misrepresentation, but rather is based on a claim of breach of contract. In addition, Koch does not allege that the Progressive Direct representative was negligent or established a fiduciary relationship with him during his inquiry for increased insurance

coverage. Accordingly, our review must be limited to whether summary judgment was appropriate in the context of Koch's breach of contract claim.

Section 1731 of the Motor Vehicle Code requires insurers upon the delivery or issuance of a motor vehicle insurance policy to offer the insured uninsured and underinsured motorist coverage. This section specifically provides that "no motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage)." 75 Pa.C.S.A. § 1731(a)-(c).

Although the purchase of uninsured motorist and underinsured motorist coverages is optional, Section 1731 provides that the insured must be provided with specific information to explain the separate purposes of UI/UIM coverage and must sign written rejection forms with certain stated language in prominent type and location in order to knowingly and voluntarily reject each type of coverage. 75 Pa.C.S.A. § 1731(b)-(c). The insured must sign and date separate forms to reject UI and UIM coverage. 75 Pa.C.S.A. § 1731(b)-(c).

In light of these requirements, Section 1731 provides that the insured will not be deemed to have waived UI and/or UIM coverage if the insurer fails to produce a valid rejection form. Further, in cases where the insured has rejected UI and/or UIM coverage, Section 1731 also requires insurers to notify

the insured on all policy renewals in prominent type that the policy "does not provide protection against uninsured and underinsured motorists." 75 Pa.C.S.A. § 1731(b)-(c).

In the instant case, the record supports the trial court's finding that Koch signed a valid rejection of UI/UIM coverage form on February 14, 2004, upon the initial delivery of the Progressive Halcyon policy for his 2002 Honda motorcycle. Although Progressive Halcyon changed its company name to Progressive Direct in 2006, the trial court determined that Progressive Direct had shown that its name change did not result in the creation of a new company and that Koch's policy remained the same throughout the years.[4]

In addition, Progressive Direct presented evidence that it had consistently sent Koch policy renewals which stated that Koch had rejected UIM coverage. After Koch had contacted Progressive Direct on August 20, 2014, increased his coverage, and purchased UI insurance, Progressive Direct sent Koch a policy renewal on January 3, 2015, which stated that the policy now included uninsured motorist coverage in the amount of $100,000 each person and $300,000 each accident and listed the corresponding premium for this coverage. Renewal Declarations Page, 1/3/15, at 2. This policy renewal listed the "underinsured motorist bodily injury" coverage as "rejected." *Id*.

---

[4] *See Breuninger v. Pennland Insurance Company*, 675 A.2d 353 (Pa.Super. 1996) (holding that the transfer of a motor vehicle insurance policy from one company to another does not necessarily constitute a "new" policy).

These coverage selections were in place at the time of the accident at issue that subsequently occurred on June 7, 2015.

The issue before this Court is whether the trial court erred in finding that the conversation on August 20, 2014 between Koch and the Progressive Direct representative created a duty or a legal obligation for the representative to offer Koch UIM coverage, notify him about UIM coverage, or to obtain a new UIM rejection form where this coverage had been previously waived in a valid rejection form. The trial court found that when Koch had contacted Progressive Direct and sought more information about obtaining additional coverage, Koch made it "obvious" that he no longer wanted to reject the coverage that he had previously declined. T.C.O., 11/18/21, at 5.

In interpreting Section 1731, this Court has held that an insured's affirmative decision to waive UIM coverage is presumed to be in effect throughout the lifetime of that policy until "affirmatively changed" by the insured. **Smith v. Hartford Ins. Co.,** 849 A.2d 277, 281 (Pa.Super. 2004).

In addition, the language of Section 1731 specifically provides that any individual who completes valid waiver forms rejecting UI and/or UIM protection under Sections 1731(b)-(c) is "precluded from claiming liability of any person based upon inadequate information." 75 Pa.C.S.A. § 1731(c.1). Further, Section 1791 of the MVFRL provides that

> [i]t shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, ***and no other notice or rejection shall be required***."

- 13 -

75 Pa.C.S.A. § 1791 (emphasis added).

In **Smith**, the first named insured (Smith) initially executed a valid waiver of UIM coverage in a policy with Hartford Insurance that covered Smith and his wife (Mrs. Smith). Smith subsequently raised the policy's liability coverage, but did not change his UIM rejection. When Mrs. Smith was injured in an accident caused by an underinsured driver, she sought UIM benefits under the policy. The trial court found *sua sponte* that, by increasing the policy limits, the insured purchased a "new" policy, which then required Hartford Insurance to supply the Smiths with a new UIM rejection form.

On appeal, this Court found there was no basis for the trial court's decision in the statute or in case law, but instead reiterated that the General Assembly stated in Section 1791 that once the insured has applied for the original coverage and been informed of the benefits and limits available, "no other notice or rejection shall be required." **Smith**, 849 A.2d at 280 (quoting 75 Pa.C.S.A. § 1791). Accordingly, this Court found that the trial court erred when it found that Smith was entitled to a new UIM rejection form when the Smiths increased the liability coverage on their existing policy.

Similarly, in this case, Koch executed a valid waiver of UI and UIM benefits upon the delivery of the original policy in February 2004. Pursuant to Section 1791, there is a presumption that Koch was advised of the benefits and limits available under his policy at the time of his application for coverage. Thus, when Koch contacted Progressive Direct on August 20, 2014 and indicated that he wished to obtain more coverage on the existing policy, the

Progressive Direct representative was not required to give Koch additional notice of a particular benefit or to obtain another UIM rejection form.

We find the trial court's citation to **Barnard v. Travelers Home and Marine Insurance Co.**, 654 Pa. 604, 216 A.3d 1045 (2019) is not applicable to the instant case. In **Barnard**, our Supreme Court determined that, pursuant to a different statutory provision (Section 1738 of the MVFRL), the insured's decision to increase the UIM coverage limits on her two vehicles covered in her policy was a "purchase" that entitled the insured to an opportunity to waive stacking of the new sum of UIM coverage. The Supreme Court held that where an insured increases the UIM coverage limit for multiple vehicles under an existing policy, the insured must execute a new rejection form to knowingly and voluntarily waive stacking of the new, aggregate amount of UIM coverage.

However, the result in **Barnard** was required by the plain language of Section 1738, which specifically provides that "[e]ach named insured *purchasing* uninsured or underinsured motorist coverage ... shall be provided the opportunity to waive the stacked limits of coverage." 75 Pa.C.S.A. § 1738 (emphasis added).

Notably, the issue in this case does not pertain to stacking of UI or UIM coverage, but the insured's complete waiver of UI and UIM coverage. The relevant statutory provision in this case (Section 1731), which applies to circumstances in which UIM coverage has been wholly waived, does not contain the same "purchase" requirement as set forth in Section 1738 or

contain any language entitling the insured to another opportunity to waive UI or UIM coverage. Thus, there is no statutory basis for the trial court's speculation that Koch's "purchase" of UI coverage at the recommendation of the Progressive Direct representative entitled Koch to an opportunity to affirmatively reject the purchase of UIM coverage.

Instead, this case is controlled by the holding of **Smith** which provides that an insured's decision to waive UIM coverage will remain in effect throughout the lifetime of that policy until affirmatively changed by the insured. **Smith**, **supra**. **See also Sackett v. Nationwide Mut. Ins. Co.** (**Sackett I**), 591 Pa. 416, 423, 919 A.2d 194, 198 (2007) (reaffirming the decision in **Smith** which was "required by the relevant statutory language of Sections 1731 and 1791").[5]

Based on this precedent and the language of Section 1731, we conclude that the UIM rejection form signed by Koch at the delivery of the policy in 2004 remained valid such that Koch was not entitled to UIM coverage at the time of the accident. Accordingly, we reverse the trial court's decision to grant Koch's motion for summary judgment and deny Progressive Direct's motion for summary judgment.

Order reversed. Case remanded for judgment to be entered in favor of Progressive Direct on all issues. Jurisdiction relinquished.

---

[5] **Sackett I** was modified on reargument on other grounds in **Sackett v. Nationwide Mut. Ins. Co.** 596 Pa. 11, 940 A.2d 329 (2007) (**Sackett II**).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/04/2022