J-A02032-24

2025 PA Super 48

| | | |
|---|---|---|
| GOODVILLE MUTUAL CASUALTY COMPANY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MALLORY MCNEAR, KAREN MCNEAR AND TODD MCNEAR | : | No. 861 MDA 2023 |
| Appellants | : | |

Appeal from the Order Entered May 25, 2023
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-20-03012

BEFORE: NICHOLS, J., KING, J., and SULLIVAN, J.

OPINION BY SULLIVAN, J.: **FILED: FEBRUARY 26, 2025**

Mallory McNear ("Mallory"), Karen McNear ("Karen"), and Todd McNear ("Todd") (collectively, "the McNears") appeal from the order granting summary judgment against them and in favor of Goodville Mutual Casualty Company ("Goodville"). We affirm.

The factual background to this appeal is undisputed and relatively straight-forward. **See** Stipulation of Facts, 4/14/23, unnumbered at 1-5; **see also** Trial Court Opinion, 5/25/23, at 2-5. The McNears had car insurance with Goodville between 2012 and 2018.[1] In 2012, Karen initially signed an election form for less-than-full underinsured motorist ("UIM") coverage, and she selected benefits of $50,000 each person/$100,000 each accident,

---

[1] Karen was the first named insured in the policy with Goodville, and Todd was also a named insured; Karen and Todd are Mallory's parents.

stacked across the three vehicles covered by the policy.[2] The McNears renewed their policy every six months, and between 2012 and 2018, they added and removed vehicles, with the policy covering as many as four and as few as two vehicles. Goodville did not obtain new limited UIM elections when the McNears added vehicles to their policy, nor did the McNears affirmatively request changes to their UIM benefits or other coverages. By 2018, the McNears' policy again covered three vehicles.

In 2018, Mallory was injured in a car accident caused by Mary Thomas ("Thomas"). Mallory recovered up to the limits of Thomas's insurance. Mallory then filed a claim with Goodville for UIM benefits. Goodville paid Mallory $150,000, based on the stacked $50,000 limited UIM benefits Karen

_____

[2] Sections 1731 to 1738 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. §§ 1701-1799.7, regulate uninsured motorist ("UM") and UIM coverage, as well as the stacking of UM and UIM benefits (hereinafter "stacking"). Specifically, section 1731 governs UIM coverage—*i.e.*, benefits to those injured by a tortfeasor who lacks adequate insurance—and the waiver of such coverage. **See** 75 Pa.C.S.A. § 1731(a), (c); **Pennsylvania Nat. Mut. Cas. Co. v. Black**, 916 A.2d 569, 580 (Pa. 2007). Section 1734 governs an insured's selection of amounts of UIM benefits and the "issuance of coverages . . . in amounts . . . less than the limits of liability for bodily injury[,]" a process also referred to as a "sign-down." 75 Pa.C.S.A. § 1734. **Cf**. **Blood v. Old Guard Ins. Co.**, 934 A.2d 1218, 1220 (Pa. 2007). Section 1738 governs stacking—*i.e.*, the ability to add the coverages available from different vehicles to provide a greater amount of coverage available under any one vehicle—and the waiver of stacking upon a "purchase" of coverage. **See** 75 Pa.C.S.A. § 1738; **Franks v. State Farm Mut. Auto. Ins. Co.**, 292 A.3d 866, 867 n.1 (Pa. 2023). We note stacking is not directly at issue in this appeal but requires discussion due to the McNears' arguments. We discuss sections 1731, 1734, and 1738 in greater detail below when addressing the trial court's resolution of the McNears' arguments.

originally selected in 2012 and the three vehicles covered at the time. The McNears disputed this amount, asserting the additions of vehicles to their policy constituted new "purchases" of coverage which required Goodville to obtain new UIM selections. Because Goodville failed to obtain new limited UIM selections, the McNears claimed, it was obliged to pay full UIM benefits up to the bodily injury benefits of their policy—*i.e.*, $250,000 stacked across three vehicles, or $750,000.[3] Goodville rejected the claim for full UIM benefits and commenced the underlying action for a judgment declaring it fulfilled its obligation to pay the limited UIM benefits Karen originally selected in 2012. Goodville subsequently moved for summary judgment, and the McNears answered and filed a cross-motion for summary judgment.

On May 25, 2023, the trial court granted Goodville's motion for summary judgment and denied the McNears' cross-motion. The trial court, after reviewing the relevant MVFRL provisions and case law, rejected the McNears' arguments based on **Barnard v. Travelers Home & Marine Ins. Co.**, 216 A.3d 1045 (Pa. 2019).[4] **See** Trial Court Opinion, 5/25/23, at 7-15. The trial court instead found persuasive the United States Third Circuit Court of

---

[3] **Cf**. **Weilacher v. State Farm Mut. Auto. Ins. Co.**, 65 A.3d 976, 986 (Pa. Super. 2013) (holding that an insurer's failure to obtain the insured's selection of limited UIM benefits required the insurer to pay full UIM benefits up to the bodily injury benefits under the policy).

[4] In **Barnard**, our Supreme Court held that an insured's decision to increase UIM benefits constituted a "purchase" of coverage and required an insurer to offer the insured a new opportunity to waive stacking under section 1738. **See Barnard**, 216 A.3d at 1047, 1051-53.

Appeal's decision in ***Geist v. State Farm Mut. Auto. Ins. Co.***, 49 F.4th 861 (3d Cir. 2022), which rejected similar arguments that ***Barnard*** should apply in a case involving selections of limited UIM coverage.[5] ***See*** Trial Court Opinion, 5/25/23, at 16-17. The trial court noted ***Barnard*** hinged on an interpretation of the term "purchase" in section 1738, but section 1734 did not use that term. ***See id***. at 17. The trial court further reasoned sections 1731 and 1734 (which govern UIM coverage, waiver of UIM coverage, and the selection of limited UIM benefits) and section 1738 (which concerns stacking and the waiver of stacking) concern different subjects and impose different duties on the insurer and the insured. ***See*** Trial Court Opinion, 5/25/23, at 18-19. The trial court observed that section 1791, which governs notices of available benefits and limits, contains a presumption that Karen and Todd had

---

[5] In ***Geist***, the insured obtained a policy covering two vehicles and initially selected less-than-full UIM benefits. ***See Geist***, 49 F.4th at 863. The insured removed one vehicle and later added a vehicle. ***See id***. The insurer did not obtain the insured's new selection of less-than-full UIM benefits when adding the new vehicle to the policy. ***See id***. The insured, like the McNears, asserted the insurer was required to obtain a new "sign-down" of limited UIM benefits and the failure to do so required the insurer to pay full UIM benefits up to the limits of bodily injury benefits. ***See id***. The ***Geist*** Court rejected the argument because sections 1731 and 1734 only required the insurer to obtain a "sign-down" at the time of it issued the original policy. ***See id***. at 865. The Court further rejected the insured's reliance on ***Barnard***, noting that ***Barnard*** relied on the language in section 1738 not contained in section 1734. ***See id***. at 865-66.

Although this Court may find the reasoning of federal court decisions persuasive, those decisions do not bind this Court. ***See Erie Ins. Exch. v. Backmeier***, 287 A.3d 931, 945 n.8 (Pa. Super. 2022), *appeal denied*, 303 A.3d 421 (Pa. 2023).

notice of UIM coverage and did not require Goodville to reissue notices concerning UIM coverage. *See id*. at 17-19. Thus, after its thorough review, the trial court held that Karen's original selection of limited UIM benefits remained effective, and Goodville had no obligation to provide additional notices when the McNears added vehicles. *See id*. The McNears timely appealed, and they and the trial court complied with Pa.R.A.P. 1925.

The McNears present the following issue for our review:

> Did the trial court err in finding, in the advent of the Supreme Court decision in *Barnard* . . ., that an insurer is required to obtain a new election of lower limits of [UIM] coverage under the MVFRL when a new vehicle is added to an existing policy?

The McNears' Brief at 2 (some capitalization omitted).

The McNears' issue implicates the trial court's decision to grant summary judgment in favor of Goodville. "Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law." *Kline v. Travelers Pers. Sec. Ins. Co.*, 223 A.3d 677, 685 (Pa. Super. 2019) (internal citations omitted). Because the McNears' issue poses a pure question of law involving the proper interpretation of the MVFRL, our standard of review is *de novo*, and our scope of review is plenary. *See Barnard*, 216 A.3d at 1050.

As our Supreme Court has stated:

> When we interpret legislative enactments, we are guided by the Statutory Construction Act, which recognizes that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

> Words and phrases within a statute must be construed according to rules of grammar and according to their common and approved usage, and must be read within the context of the remaining statutory language. It is only when the plain language of a statute is ambiguous that courts may resort to other tools of statutory construction in order to ascertain the General Assembly's intent.

*Id*. at 1050-51 (internal citations and quotation marks omitted).

Provisions of the MVFRL must be read *in pari materia* "at least in the broadest sense . . . of the MVFRL's comprehensive scheme for promoting financial responsibility in the motoring public and, more particularly, as relating to the provision of UIM coverage within the context of such scheme." *Lewis v. Erie Ins. Exch.*, 793 A.2d 143, 149 (Pa. 2002) (internal citation omitted). While an appellate court thus reviews provisions of MVFRL *in pari materia* "in a broad sense," material differences in subject matter allows for differential treatment to the extent it appears legislatively intended. *See id*. at 153 (internal citation omitted).

The McNears maintain that each addition of a vehicle to their policy with Goodville constituted a purchase of UIM coverage, which required the issuance of new coverage, and thus obliged Goodville to obtain new elections concerning UIM benefits. *See* The McNears' Brief at 12. In support, the McNears assert that "*Barnard* changed the paradigm for the analysis of insurance coverage questions under the MVFRL." *Id*. at 8. The McNears argue that, just as *Barnard* decided that an increase of UIM coverage constituted a new "purchase" of coverage requiring a new waiver of stacking under section 1738(c), an addition of a vehicle to a policy constitutes a "purchase" of new

UIM coverage, which requires new elections of limited UIM benefits under sections 1731 and 1734. *See id*. at 20.

The McNears concede that section 1734, unlike section 1738, does not use the term "purchase," but they contend section 1734 speaks to the "issuance" of coverage when an insured elects limited bodily injury benefits. *See id*. at 24-26. The McNears assert there is no meaningful difference between a "purchase" and an "issuance" of coverage, as the insured must "purchase" coverage before a policy or coverage will "issue." *See id*. at 27, 29-30. Further, the McNears claim that because sections 1734 and 1738 concern the amount of UIM benefits purchased, it would be illogical to require an insurer to offer a new opportunity to waive stacking but not require a similar opportunity to waive, select, and/or increase limited UIM benefits. *See id*. at 12. According to the McNears, requiring an insurer to obtain new elections of limited UIM benefits is consonant with *Barnard*, a reading of the MVFRL, the legislative history of the MVFRL, and the changing emphasis from cost control toward coverage. *See id*. at 13-30.[6] The McNears thus conclude the trial court erred in holding that Karen's original selection of limited UIM

---

[6] The McNears assail the trial court's analysis and conclusion for similar reasons. They assert the trial court failed to read sections 1731, 1734, and 1738 *in pari materia*, did not understand how the MVFRL operates as a whole, and failed to appreciate the significance of *Barnard* upon coverage claims under the MVFRL. *See* The McNears' Brief at 26-31. The McNears further contend that the trial court improperly relied upon *Geist*, a Third Circuit Court of Appeals decision, which was not binding, and which was faultily reasoned. *See id*. at 31-32. Specifically, the McNears argue the trial court unreasonably distinguished the terms "purchase," as used in section 1738, and "issuance," as used in section 1734. *See id*.

benefits remained effective despite the additions of vehicles to the policy, granting summary judgment in favor of Goodville, and refusing to declare that they were entitled to full UIM benefits.

The trial court considered the McNears' arguments and concluded they lacked merit. *See* Trial Court Opinion, 5/25/23, at 8-9. The trial court explained:

> [The McNears] invite[] the Court to find no difference between the language used in section 1731 and that used in 1738 regarding the words "issuance" and "purchase" respectively. . . . While compelling, it is not wholly convincing.
>
> Not too long ago, the Third Circuit in *Geist* . . ., addressed the question that is presently before this [c]ourt. The [c]ourt finds the cogent analysis and decision in *Geist* persuasive.
>
> * * * *
>
> As recognized by the [Pennsylvania Supreme Court in *Lewis*], there is an explicit distinction in the language used by the General Assembly thereby allowing for differential treatment. The failure of an insured to obtain a rejection form or failure to comply with the precise language found in sections 1731 and 1738 cannot be equated with section 1734[,] which places the obligation on the insured[,] who "may request in writing the issuance of coverages under section 1731 . . . in amounts equal to or less than the limits of liability for bodily injury." 75 Pa.C.S.A. § 1734.

*Id*. at 15-16, 18.

For the reasons that follow, we conclude the trial court properly rejected the McNears' arguments based on its sound review of the MVFRL and the persuasive case law.

Initially, with respect to an insured's selection of limited UIM coverage, section 1731 of the MVFRL provides that an insurer must offer UIM coverages

in all policies "issued for delivery" but the "purchase" of UIM coverage by an insured is optional. 75 Pa.C.S.A. § 1731(a). To that end, the insured may waive UIM coverage entirely by signing a prescribed written rejection form. *See* 75 Pa.C.S.A. § 1731(c). More fully, section 1731 provides:

> **(a) Mandatory offering.--**No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). ***Purchase of uninsured motorist and underinsured motorist coverages is optional***.
>
> * * * *
>
> **(c) Underinsured motorist coverage.--**Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:
>
> **REJECTION OF UNDERINSURED MOTORIST PROTECTION**
>
> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.
>
> Signature of First Named Insured
>
> Date
>
> **(c.1) Form of waiver.--**Insurers shall print the rejection forms required by subsection[ (c)] on separate sheets in prominent type

and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection [(c)] shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.C.S.A. § 1731 (a), (c), (c.1) (emphasis added).

Alternatively, an insured may request lower limits of UIM coverage as provided for in section 1734, which states, in full:

A named insured may request in writing **the issuance of coverages under section 1731** (relating to availability, scope and amount of coverage) **in amounts equal to or less than the limits of liability for bodily injury**.

75 Pa.C.S.A. § 1734 (emphasis added).[7] As noted by the trial court, and conceded by the McNears, section 1734 does not refer to a "purchase" of

---

[7] Notably, the requirements for waiving UIM coverage under section 1731(c) and (c.1) contain additional safeguards not contained in section 1734. Section 1731 provides that an insured will not waive UIM coverage if the insurer fails to produce a valid rejection form. **See** 75 Pa.C.S.A. §§ 1731(c), (c.1). Section 1731 also requires the insurer to notify the insured a policy does not provide protection against uninsured and underinsured motorists on all renewals and in prominent type. **See** 75 Pa.C.S.A. § 1731(c.1). Section 1734 does not contain similar safeguards with respect to selections of limited UIM coverage, Moreover, section 1734 does not prescribe a form for selecting limited UIM coverage. **See Lewis** 793 A.2d at 155 (holding that a complete waiver of UM and UIM coverage is not a prerequisite to a selection of limited UIM benefits and concluding that a form, which failed to comply with section 1731's
*(Footnote Continued Next Page)*

coverage by the insured.[8]  Tellingly, however, while section 1734 refers to the "issuance of coverages," it does so in a particular context.  As our Supreme Court has stated, the meaning of section 1734 is apparent from its language:

> [A] named insured may lower [the] statutorily provided UIM coverage limits by requesting in writing of her insurer to do so. The insurance company's obligation to ***issue*** a policy with [UM/UIM] coverage in an amount equal to the policy's bodily injury liability coverage is not relieved unless it has received such a written request.

***Blood***, 934 A.2d at 1226 (internal citation omitted) (emphasis in original).

When construing the obligations of an insurer under sections 1731 and 1734, our courts have also looked to section 1791, which, under certain circumstances, permits an insurer to presume that the insured is aware of the benefits and limits available under the MVFRL and a given policy.  Specifically, section 1791 states, in relevant part:

> ***It shall be presumed that the insured has been advised of the benefits and limits available*** under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant ***at the time of application for original coverage***, ***and no other notice or rejection shall be required***:
>
> IMPORTANT NOTICE

---

requirement to waive UM and UIM coverage, was effective as to a selection of limited UM and UIM benefits).

[8] Section 1734 does cross-reference to section 1731, which indicates that a "purchase" of UIM coverage "is optional."  ***See*** 75 Pa.C.S.A. § 1734; ***see also*** 75 Pa.C.S.A. § 1731(a).  Section 1731 uses the term "purchase" only once in the above-quoted provision that the purchase of UM or UIM coverages is optional.

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

\* \* \* \*

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident . . ..

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits **as well as the benefits and limits you have selected**.

75 Pa.C.S.A. § 1791 (emphases added); *see Lewis*, 793 A.2d at 153; *Koch v. Progressive Direct Ins. Co.*, 280 A.3d 1060, 1067 (Pa. Super. 2022); *Smith v. Hartford Ins. Co.*, 849 A.2d 277, 280-81 (Pa. Super. 2004). As stated in *Smith* and *Koch*, with *Koch* being decided after *Barnard*, "once an affirmative election [concerning the waiver of UM and UIM] is made, that election is presumed to be in effect throughout the lifetime of that policy." *Smith*, 849 A.2d at 281 (internal citation omitted); *accord Koch*, 280 A.3d at 1068.[9]

_____

[9] We acknowledge that both **Smith** and **Koch** considered the effect of changes in a policy upon the insurer's obligation to obtain waivers of UIM coverage under section 1731, not affirmative selections of limited UIM benefits under section 1734. **See Koch**, 280 A.3d at 1063, 1068 (holding that an insurer was not required to obtain a new waiver of UIM benefits even where the

*(Footnote Continued Next Page)*

Following our review of the relevant provisions of the MVFRL, we discern no error in the trial court's analysis of the statute and persuasive case law. Section 1734 requires only that the insurer "issue" UIM coverage in the amount selected by a named insured in a writing signed by a named insured. *See* 75 Pa.C.S.A. § 1734; *Blood*, 934 A.2d at 1226. Section 1791 permits an insurer to rely on elections and notices regarding the availability of UIM benefits *at the time of application for original coverage*. *See* 75 Pa.C.S.A. § 1791; *Koch*, 280 A.3d at 1068; *Smith*, 849 A.2d at 281. Because it is undisputed that Karen completed a "sign-down" selecting limited UIM coverage; neither Karen nor Todd (the named insureds on the policy) affirmatively requested a change, in writing, to UIM coverage; and the McNears did object to any defects in the section 1791 notices they received at the time Karen applied for coverage, we agree with the trial court that Karen's original "sign-down" remained effective at the time Mallory suffered injuries

_____

insured added UM coverage to a policy and the insured had added and deleted different motorcycles to the policy); *Smith*, 849 A.2d at 278-79, 281 (holding that an increase in liability coverage did not require the insurer to provide a new waiver of UIM coverage form). We add that our courts have distinguished the provisions concerning waiver of UM and UIM coverage, the forms and procedures for which are set forth in exacting detail in section 1731, and "sign-downs" forms selecting limited UM or UIM coverage under section 1734, which contains no similar details. *See Blood*, 934 A.2d at 1226 (holding that an insurer was not required to obtain a new "sign-down;" the change in liability limits did not affect an otherwise valid section 1734 selection and the reduction of liability limits and did not constitute a delivery or issuance of a policy) *Lewis*, 793 A.2d at 153. However, we do not find the difference between the issue of waivers of UIM coverage addressed in *Smith* and *Koch* and section 1734 "sign-downs" meaningful with respect to the import of section 1791 to a selection of limited UIM benefits.

caused by an underinsured motorist. Moreover, pursuant to section 1791, Goodville was under no obligation to provide additional notices regarding the limited UIM benefits Karen had originally selected. *See* 75 Pa.C.S.A. § 1791.[10]

A review of the stacking provisions of the MVFRL and ***Barnard*** further supports the trial court's conclusion that the McNears' reliance on ***Barnard*** is inapt. Foremost, ***Barnard*** concerned waiver of stacking, which is governed by section 1738. ***See Koch***, 280 A.3d at 1068 (distinguishing ***Barnard***

_____

[10] As our Supreme Court explained, when distinguishing the form and procedural requirements for waiving UIM coverage and selecting limited UIM benefits:

> [I]t is reasonable to conclude that the General Assembly attached the additional requirements to outright waiver/rejection to confer explicit warning upon consumers who chose to drive without any financial protection from injury on account of uninsured or underinsured motorists. Further . . . requests for specific limits coverage, in contrast to outright waiver/ rejection, require not only the signature of the insured, but also, an express designation of the amount of coverage requested, thus lessening the potential for confusion. Additionally, as concerns the Lewises' arguments regarding notice of the extent of available coverage, [s]ection 1791 of the MVFRL occupies a central role as it concerns the conveyance of information regarding, *inter alia*, the insurer's obligation to offer UM and UIM coverage of up to at least $100,000 per person and $300,000 per accident, and of the insured's option to purchase coverage carrying lower benefit limits. ***See*** 75 Pa.C.S. § 1791. Indeed, by the terms of the statute, an insured's awareness of the benefits and limits available under the financial responsibility provisions of the MVFRL is presumed upon the provision of such notice, and no other notice or rejection shall be required.

***Lewis***, 793 A.2d at 153-54 (internal citations and quotation marks omitted).

because that case involved waivers of stacking under section 1738, not the waiver of UIM benefits under section 1731).  Section 1738 provides:

> **(a) Limit for each vehicle**.--When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured.  The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

> **(b) Waiver.--**Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

> **(c) More than one vehicle.--*Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage*** and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

> **(d) Forms.--**

> \* \* \* \*

> (2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

> ### UNDERINSURED COVERAGE LIMITS

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household **under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy.  Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy**.  I knowingly

and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

Signature of First Named Insured

Date

**(e) Signature and date.--**The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

75 Pa.C.S.A. § 1738.

While the McNears contend **Barnard** effected a sea change in the interpretation of an insurer's obligations under the MVFRL, we note that our Supreme Court previously held that the addition of a new vehicle constituted a "purchase" of coverage under section 1738, which, in turn, required the insurer to obtain new section 1738(c) waivers of stacking. **Sackett v. Nationwide Mut. Ins. Co.**, 919 A.2d 194, 203 (Pa. 2007) ("**Sackett I**"), *modified on reargument*, 940 A.2d 329 (Pa. 2007) ("**Sackett II**").[11] Nevertheless, because the McNears rely on **Barnard**, we review that decision.

In **Barnard**, our Supreme Court concluded an insured's decision to increase the UIM benefits she originally selected constituted a "purchase" of coverage within the meaning of section 1738. The **Barnard** Court reasoned:

[N]othing in Subsection 1738(c) limits the term 'purchase' to an insured's initial purchase of an insurance policy. Rather, the subsection requires the execution of a new stacking waiver any

---

[11] **Sackett II** modified **Sackett I** to the extent a policy contained a provision that offered coverage to after-acquired vehicles. **See Sackett II**, 940 A.2d at 334.

- 16 -

time an insured pays to obtain UIM coverage for multiple vehicles, regardless of whether this acquisition occurs when an individual initially applies for insurance, or when she subsequently pays to obtain additional UIM coverage.

**Barnard**, 216 A.3d at 1052. In support of its conclusion that an increase in UIM benefits constitutes a "purchase," the **Barnard** Court started with a plain meaning definition of a "purchase" as the act of buying or obtaining something by paying for it. **See id**. at 1051.[12] The Court found persuasive that the prescribed stacking waiver form in section 1738(d)(2) required an opportunity for the insured to reject stacking for the increased aggregate benefits knowingly and voluntarily. **See id**. at 1052.

The **Barnard** Court further rejected the insurer's arguments that section 1791 should inform an interpretation of the term "purchase," stating: "Critically, the notice contained in [s]ection 1791 does not discuss stacking. Thus, [s]ection 1738's express requirement that an insurance company offer an insured the opportunity to waive stacking **is an additional obligation outside the purview of section 1791**." **Id**. at 1053 (emphasis added). Thus, **Barnard** distinguished, but did not overrule, or criticize, prior decisions discussing section 1791. **See id**. at 1053 n.8 (citing, *inter alia*, **Smith**).

Thus, we decline the McNears' invitation to apply **Barnard** broadly to hold that an addition of a vehicle required Goodville to obtain a new "sign-down." The McNears are correct that sections 1731, 1734, and 1738, in the

---

[12] Chief Justice Saylor filed a dissent in **Barnard** and opined that a "purchase" was a term of art for the purpose of section 1738(c) and was not amenable to a recourse to dictionary definitions. **See Barnard**, 216 A.3d at 1054 (Saylor, C.J., dissenting).

broadest sense, all relate to an amount of UIM benefits the insured may receive under a policy. However, section 1731's singular use of the term "purchase" occurs in a wholly different context than section 1738. *Compare* 75 Pa.C.S.A. § 1731 (stating that the purchase of UM and UIM coverage is optional) *with* 75 Pa.C.S.A. § 1738 (stating a purchase of UM or UIM coverage for more than one vehicle under a policy gives rise to an opportunity to waive the stacked limits of coverage); *accord Koch*, 280 A.3d at 1068. Crucially, section 1734, which more specifically governs selections of limited UIM benefits, does not use the term "purchase" at all. *See* 75 Pa.C.S.A. § 1734. A more complete reading of section 1734 further negates any surface appeal to the McNears' repeated argument that coverage cannot issue without a purchase. *See* 75 Pa.C.S.A. § 1734 (stating that a named insured may request the issuance of coverages under section 1731); *see also Blood*, 934 A.2d at 1226 (indicating that the insurer's obligation to issue UIM benefits under section 1734 is triggered by the insured's written request, or lack thereof). Furthermore, neither section 1731 nor section 1734 use the term "purchase" in a comparable context to section 1738, and, significantly, sections 1731 and 1734 do not speak to an insured's opportunities to waive or select UIM benefits after making an initial selection. *Cf. Koch*, 280 A.3d at 1068.

Thus, a review of MVFRL and the case law clarifies that the General Assembly used different terms when regulating different things, namely, the waiver of any amount of UIM benefits under section 1731, an affirmative

selection of less than full UIM benefits under section 1734, and the opportunity to stack across multiple vehicles under section 1738. **See Lewis**, 793 A.2d at 153. Although section 1791 does not assist in an interpretation of section 1738's waiver of stacking requirement, **see Barnard**, 216 A.3d at 1052, section 1791 still informs the interpretation of sections 1731 and 1734. **Cf**. **Koch**, 280 A.3d at 1068. For these reasons, **Barnard**'s construction of the term "purchase" in section 1738, does not control the effectiveness of a named insured's original selection of limited UIM coverage or the insurer's purported obligation to obtain a new "sign-down" under section 1731 and 1734 when there is an addition of a vehicle to a policy.

In sum, having reviewed the facts, arguments, and law relevant to this appeal, we conclude that this case is best decided by the principle that once Karen selected limited UIM benefits when applying for original coverage, Goodville was entitled to presume that her selection remained effective until affirmatively changed by a named insured. **See** 75 Pa.C.S.A. §§ 1734, 1791; **cf**. **Barnard**, 216 A.3d at 1053; **Koch**, 280 A.3d at 1067. This conclusion is consistent with what the text of section 1734 says and does not say; **Barnard**'s view that stacking was not one of the matters included in section 1791; and related case law, which this Court most recently reaffirmed in **Koch**. Thus, the trial court properly granted summary judgment in favor of Goodville and against the McNears.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/26/2025